IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONOVAN et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 08 C 3098 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| COUNTY OF LAKE, | ) | |
| | ) | |
| Defendant. | ) | |

**LAKE COUNTY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER FRCP 12(b)(1) AND 12(b)(6)**

The County of Lake ("Lake County"), by and through its attorneys, now files this Memorandum in support of its Motion to Dismiss Plaintiffs' Complaint. In support, Lake County states as follows:

**INTRODUCTION**

Plaintiffs, residents of Lake County, are served by a County-owned water system known as the Hawthorne Woods-Glennshire Water System (the "HWG System"). Lake County took over the HWG System from the Village of Hawthorn Woods (the "Village") in 1975. Transfer of the HWG System, and the relationship between Lake County and the Village, is documented in the October 21, 1975 "Agreement for Water Supply and Operation" (the "Contract") which is attached to Plaintiffs' Complaint as Exhibit A. According to Plaintiffs' Complaint, the HWG System "has 224 direct service connections and serves approximately 672 residents." Complaint ¶ 11.

In their Complaint, Plaintiffs assert that they are third-party beneficiaries of the Contract and seek to enforce their alleged contract-based rights against Lake County. Plaintiffs also allege

that Lake County's decision to "surcharge" the users of the HWG System for the expected costs of upgrading the HWG System violate Plaintiffs' rights under the Equal Protection Clause of the United States Constitution.

For a host of reasons, Plaintiffs' Complaint should be dismissed:

First, Lake County has not formally enacted any cost-recovery mechanism and Plaintiffs are not currently obligated to pay for the costs of the prospective upgrades. As such, Plaintiffs have not yet suffered an actual, concrete and particularized, constitutional injury. They therefore lack standing and this Court lacks subject matter jurisdiction. *See* FRCP 12(b)(1).

Second, even if Plaintiffs had suffered an injury, the Court would lack subject matter jurisdiction to entertain a challenge to a "surcharge." As the Seventh Circuit recently made clear in *Taake v. County of Monroe*, ___ F.3d ___, 2008 WL 2437619 (7th Cir.) (June 18, 2008), Plaintiffs' breach-of-contract claim (Count II) does not confer jurisdiction, nor can that breach-of-contract claim be re-characterization as equal protection claim. In addition, even if Plaintiffs could state an equal protection claim, the Tax Injunction Act, 28 U.S.C. § 1341, and/or the Johnson Act, 28 U.S.C. § 1342 (governing public utility rates), deprives this Court of jurisdiction. *See* FRCP 12(b)(1).

Third, even if Plaintiffs could clear these jurisdictional hurdles, Plaintiffs' equal protection claim fails to state a claim, as the terms of the Contract provide a clear rational basis for Lake County to treat those served by the HWG System in a distinct manner. *See* FRCP 12(b)(6).

## ARGUMENT

I.   **FRCP 12(b)(1) - Lake County Has Not Approved Any Surcharges. Therefore, Plaintiffs Have Not Suffered an Injury and this Action is Not Ripe.**

Plaintiffs are complaining about something Lake County *might* do, but has not yet done – charge the residents served by the HWG System for the cost of upgrading the HWG System. Complaint, ¶¶ 26-27. The Complaint is, however, notably for what it does *not* allege: It does not allege that proposed upgrades have been approved by Lake County; and it does not allege that Lake County has taken any formal action with respect to the manner in which it will pay for the proposed upgrades, including action with respect to any charge or surcharge on residents who will use the upgraded HWG System.[1]

Imposition of such a charge or surcharge can only be accomplished by a legislative act. *See* 55 ILCS 5/5-15021 ("rates and charges for use and service for all purposes including charges to connect to such [waterworks] properties . . . shall be established, revised, maintained, be due and payable, and be in force as the county board may determine by separate ordinances."). Thus, unless and until Lake County formally passes a "surcharge" ordinance, Plaintiff have suffered no concrete injury and have no standing. With no ordinance in place, Plaintiffs' alleged injury "cannot be other than hypothetical and conjectural until the law that might inflict the injury is in fact the law." *Associated General Contractors of America v. City of Columbus*, 172 F.3d 411,

---

[1] In 2006, the Illinois Environmental Protection Agency filed a state-court enforcement action against Lake County. *See People ex rel. Madigan v. County of Lake*, 06 CH 2569 (Lake Count, Illinois) (the "State Litigation"). In the State Litigation, the IEPA has claimed that the existing HWG System violates the regulations applicable to public water systems. Both before and after the filing of the State Litigation, Lake County, through resolutions by its Public Works & Transportation Committee has expressed a willingness to upgrade the HWG System (provided that the Village cooperates in granting the necessary zoning and other local approvals) and to contribute $1 million to the cost of the upgrades. However, no formal decisions have been made by the County Board with respect upgrading the HWG System, funding the costs of the upgrades, or surcharging the residents.

419-20 (6th Cir. 1999) (plaintiffs lacked standing to challenge proposed Equal Business Opportunity Code until city actually enacted code). Likewise, Plaintiffs have no standing to enjoin Lake County from enacting such a surcharge ordinance. *Id*. at 415-16 ("the role of the court is to intervene, if at all, only after a legislative enactment has been passed.").

II.     **FRCP 12(b)(1) - Even if Plaintiffs' Had Standing, This Court Lacks Jurisdiction.**

    A.     **Plaintiffs' Breach-of-Contract Claim Does Not Confer Jurisdiction.**

As the Seventh Circuit recently reiterated, an allegation that a state actor has breached a contract does not implicate the Constitution or confer jurisdiction on federal courts to resolve the contractual dispute. *Taake*, 2008 WL 2437619, *1-*2. Count II of Plaintiffs' Complaint is squarely a claim for breach-of-contract (with the Plaintiffs as third-party beneficiaries) and cannot confer jurisdiction. *Id*. at *3 ("When a state actor breaches a contract it has with a private citizen, and the subject matter of that contract does not implicate fundamental liberty or property interests, the state acts just like any other contracting private citizen; the proper tribunal to adjudicate issues arising from the contract (or alleged contract) is a state court, because contract law is a creature of state law.").

It is true that Plaintiffs invoke the Equal Protection Clause in Count I of their Complaint, but they cannot obtain jurisdiction by the rote mention of "equal protection" or by refashioning their breach-of-contract claim as an equal protection claim. *Taake*, at *3. Like the references to "substantive due process" and "procedural due process" in *Taake*, Plaintiffs' allegations regarding equal protection are nothing more than a repackaging of their state law breach-of-contract claim.

Plaintiffs allege that they have been (or, more accurately, *will be*) treated worse than other residents of Lake County because the County will require Plaintiffs to pay for utility upgrades while other residents have not been similarly surcharged. Complaint, ¶¶ 28-29. But

4

Plaintiffs also allege that the treatment to which they are entitled, and their relationship with Lake County, is governed by the Contract. Complaint, ¶¶ 51-52, 57-59. So assuming that the Plaintiffs truly are third-party beneficiaries of the Contract, Lake County's obligations to them are governed by the Contract and Plaintiffs have no independent equal protection claim.

### B. The Tax Injunction Act and/or the Johnson Act Preclude Jurisdiction.

Even if Plaintiffs could state a valid equal protection claim, the Court lacks jurisdiction to adjudicate the claim.

#### 1. The Tax Injunction Act.

The Tax Injunction Act, 28 U.S.C. § 1341, bars federal courts from enjoining, suspending or restraining the assessment, levy or collection of any taxes under state law. *See, e.g., Hay v. Indiana State Bd. of Tax Commissioners*, 312 F.3d 876, 878 (7th Cir. 2002); *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 582 (7th Cir. 1999) ("the Act is applicable to local as well as state taxes"). The limitation that the Act places on the powers of federal courts is deemed jurisdictional, so that federal courts are barred from even considering a challenge – including a constitutional challenge – to the assessment of state and local taxes. *City of Platteville*, 179 F.3d at 582; *Levy v. Pappas*, 510 F.3d 755, 757 (7th Cir. 2007) ("The Tax Injunction Act is a somewhat unusual statute, in that it does not confer jurisdiction on the district courts, but instead deprives them of jurisdiction they would otherwise have to hear certain challenges to state taxes.").

As stated above, Lake County has yet to impose *any* charges on Plaintiffs and their injury is, therefore, speculative. However, assuming that Plaintiffs have standing to challenge the proposed "surcharge for the cost of constructing the replacement water system," Complaint, ¶ 27, their challenge would be barred by the Tax Injunction Act.

Numerous courts have found that similar charges for municipal services are properly classified as "taxes" and, per the Tax Injunction Act, cannot be challenged in federal court. *See, e.g., Jefferson Development Group, Inc. v. Georgetown Municipal Water & Sewer Service*, 2008 WL 687193, *3-*5 (E.D.Ky. 2008) (collecting cases) ("tap fees," *i.e.*, fees to connect to a municipal water system, were "taxes" for the purpose of the Tax Injunction Act); *McLeod v. Columbia County, Georgia*, 254 F.Supp.2d 1340, 1344-49 (S.D.Ga. 2003) ("storm water service charge" assessed by county utility was a "tax" and the plaintiffs' challenge was barred by the Tax Injunction Act); *Trading Company of North America, Inc. v. Bristol Township Authority*, 47 F.Supp.2d 563, 567-71 (E.D.Pa. 1999) (assessment of sewer charges was considered a "tax" for purposes of the Tax Injunction Act).[2] The same is true of Plaintiffs' challenge to the prospective "surcharge" – it is barred by the Tax Injunction Act.

  2. **The Johnson Act.**

In the alternative, the Johnson Act, 28 U.S.C. § 1342, prohibits federal courts from enjoining, suspending, or restraining "the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or ratemaking body of a political subdivision" so long a four conditions, including "reasonable notice" and "a plain, speedy and efficient" state court remedy, are present.

The Johnson act applies to rates and charges established by public utilities, even if those charges are not set or approved by a public utility commission. It governs "rates" (including assessments, charges, surcharges and fees) set by government-owned utilities and bars federal

---

[2] *Cf. Hager v. City of West Peoria*, 84 F.3d 856, 870-72 (7th Cir. 1996) ($20.00 per load charge for use of road by overweight trucks was designed to "control certain activities, not to raise revenues" and was properly characterized as a "fee" rather than a "tax;" thus, the plaintiffs' challenge to the charge was not barred by Tax Injunction Act; the charge, however, was rationally related to legitimate ends and did not violate the equal protection clause).

6

courts from hearing challenges to those determinations. *See, e.g., Trading Company of North America,* 47 F.Supp.2d at 573-74 (sewer assessment imposed by township was governed by the Johnson Act and the Johnson Act provided alternative reason for dismissal); *Norman Apartment Ass'n v. City of Norman*, 64 Fed.Appx. 166, 2003 WL 2007730 (10th Cir. 2003) ($5.00 surcharge on each water and sewer customer imposed by city utility was an "order affecting rates" and subject to the Johnson Act); *Beechwood Devp., LLC v. Olympus Terrace Sewer Dist.*, 2005 WL 2573331, * 3 (W.D.Wash. 2005) (challenge to sewer connect fee imposed by municipal utility was barred by the Johnson Act).

With respect to the four conditions that must be met to invoke the Johnson Act: (1) jurisdiction (if it exists) is based upon Plaintiffs' constitutional (equal protection) challenge; (2) the order establishing the surcharge (which has yet to be issued) does not interfere with interstate commerce; (3) the rate order will be made after reasonable notice and hearing by Lake County; and (4) once the rate order is issued, Illinois law provides an avenue to challenge the order. *See, e.g., Inland Real Estate Corp. v. Village of Palatine*, 496 N.E.2d 998 (Ill. App. Ct. 1986) (upholding customers' challenge to utility rates set by local government). Thus, an alternative to the Tax Injunction Act, the Johnson Act deprives the Court of jurisdiction to adjudicate Plaintiffs' claims.

**III.    FRCP 12(b)(1) - In the Alternative, Plaintiffs' Equal Protection Claim Should Be Dismissed Because a Rational Basis for Distinct Treatment is Plainly Apparent.**

Even if Plaintiffs could overcome jurisdiction hurdles and set out an independent equal protection claim, Lake County would be entitled to judgment on the merits of that claim. As Plaintiffs are not part of a protected class, their challenge to the presumptive "surcharge" would be entitled to no more than rational basis scrutiny.

7

For example, in *City of West Peoria*, the Seventh Circuit reversed the district court's determination that the Tax Injunction Act stripped it of jurisdiction, but the Seventh Circuit went right to the merits of the plaintiff's equal protection claim and found that the fee at issue was supported by a rational concern for the maintenance of city streets. *Id*. 84 F.3d at 872-74.

Thus, to justify the alleged differential treatment Lake County need only identify a rational basis for its preliminary decision to charge Plaintiffs for the planned upgrades to the HWG System. *See, e.g., Smith v. City of Chicago*, 457 F.3d 643, 650-55 (7th Cir. 2006) (city's decision to pay legal fees of one set of alderman, but not a second set of alderman was subject to rational basis scrutiny, and city had a rational basis for distinguishing between the two sets); *Lamers Dairy, Inc. v. United States Department of Agriculture*, 379 F.3d 466 (7th Cir. 2004) (USDA's decision to treat two classes of milk handlers differently was subject to rational basis scrutiny, and USDA had rational basis for differences in treatment). [3] The existence of a rational basis is a question of law that can be decided in a motion to dismiss. *See, e.g., 520 S. Michigan Assoc. Ltd. v. Shannon*, 2007 WL 2728757, *9-*10 (N.D. Ill. Sept. 17, 2007) ("Courts in this district have repeatedly granted 12(b)(6) motions to dismiss an equal protection claim when the government action is rationally related to a legitimate objective.")

Here, the very *existence* of the Contract which, as Plaintiffs allege, governs the operation of the HWG System, provides that rational distinction. Beyond that, the *terms* of the Contract include a provision that identifies "funds derived from the local system" as the appropriate way

---

[3] For purpose of this motion only, Lake County accepts Plaintiffs' allegation that other residents of Lake County have received preferential treatment in that they have not been surcharged for upgrades to their water systems. See Complaint, ¶¶ 28-29. However, there is no allegation that the operation of these other systems was governed or controlled by a contract, so it is impossible to argue that these other residents are "similarly situated" for equal protection purposes. *See Smith*, 457 F.3d at 650-51 (plaintiff must demonstrate favorable treatment of others "similarly situated" *and* lack of rational basis).

to pay for upgrades to the HWG System. *See* Contract, Section 6. Again, this contractual language regarding the funding of upgrades provides a rational basis for the proposed surcharge.[4] *See, e.g., Smith*, 457 F.3d at 653 ("Decisions about which activities should receive governmental subsidies and which should not are matters of policy and discretion and are especially inappropriate for judicial second-guessing under rational-basis review").

## CONCLUSION

For the above reasons, the Court should find that it lacks jurisdiction over this matter and should dismiss the case. In the alternative, if the Court believes it has jurisdiction, it should find that Plaintiffs' equal protection count fails to state a claim and it should dismiss Plaintiffs' supplemental state law breach-of-contract claim pursuant to 28 U.S.C. § 1367.

Dated: July 21, 2008

Respectfully submitted,
COUNTY OF LAKE, ILLINOIS

By: _____/s/ Adam M. Kingsley_____
        One of its attorneys

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica
Assistant State's Attorney
18 N. County Street
Waukegan, IL  60085
(847) 377-3101

James C. Bakk
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL  60085
(847) 249-9900

Adam M. Kingsley
Holland & Knight LLP
131 S. Dearborn, Suite 3000
Chicago, IL  60603
(312) 928-6027

# 5437590_v1

---

[4] Plaintiffs cannot overcome this rational basis by arguing about the meaning of the language or the correctness of Lake County's interpretation of the Contract. This would bring us full circle to the breach-of-contract claim, which, as discussed earlier, cannot confer jurisdiction.

9