## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER DONOVAN, AMANDA DONOVAN, ROBERT COOPER, AND MARY COOPER,** Individually and on Behalf of All Persons Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 3098 |
| v. | ) ) | Judge Joan Humphrey Lefkow |
| **COUNTY OF LAKE**, a Body Politic and Corporate of the State of Illinois, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

I.

### INTRODUCTION

The Illinois EPA has required that Lake County replace the water system Plaintiffs use for potable water. The County has refused to pay for the construction of a new water system with monies from its Public Works fund, even though it has used this fund to pay for capital improvements under comparable circumstances. There is no rational basis for treating Plaintiffs differently than others similarly situated. Against these uncontestable allegations -- they are accepted as true for present purposes -- the County (or "Defendant") has moved for the dismissal of Plaintiffs' Complaint.

Defendant contends that:

- Plaintiffs have not suffered any injury; however, no "injury" is required to have standing for remedying Equal Protection violations;

- Plaintiffs' case is not ripe; however, Plaintiffs have alleged, and the evidence in the record shows, that Plaintiffs' properties and those of their neighbors have suffered significant damages as a result of Defendant's illegal conduct;

- This Court lacks subject matter jurisdiction because of: a) a contract; b) the Tax Injunction Act; and c) the Johnson Act, but, Plaintiffs' Equal Protection Claim confers subject matter jurisdiction in this case, and neither one of these inapplicable statutes divests this Court of jurisdiction; and

- Finally, that -- contrary to the allegations in the Complaint -- there is a rational basis for treating Plaintiffs differently than others similarly situated; however, this dispute cannot be resolved against Plaintiffs on a Rule 12(b)(6) Motion to Dismiss.

II.
ARGUMENT

**1.     Legal Standards**

When considering a Rule 12(b)(6) motion to dismiss:

> [T]he Court reads the complaint liberally, granting the motion only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that entitles him to relief. *Conley v. Gibson.* 355 U.S. 41, 45-46 (1957). We accept all the allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Cler v. Ill. Educ. Ass'n.*, 423 F.3d 726, 729 (7th Cir. 2005).

*Young v. County of Cook*, No. 06-C-552, 2006 WL 4500062, at *2 (N.D. Ill. Aug. 25, 2006).

The United States Supreme Court and the Seventh Circuit Court of Appeals have stressed that the liberal construction given to complaints under Rule 12(b)(6) must be applied in combination with the minimal notice pleading requirement of Federal Rule 8. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 501 (1975) (motion to dismiss for lack of standing); *Vincent v. City of Colleges of Chicago*, 485 F.3d 919, 923-24 (7th Cir. 2007); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). For example, the Seventh Circuit held in *Vincent:*

> [A] judicial order dismissing a complaint because the plaintiff did not plead facts has a short half-life. "Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)." (citation omitted) Civil Rule 8 calls for a short and plain

2

statement; the plaintiff pleads claims, not facts or legal theories. (citation omitted) Factual detail comes later – perhaps in response to a motion for summary judgment. Until then, the possibility that facts will be adduced later, and consistent with the complaint, could prove the claim, is enough for the litigation to move forward.

485 F.3d at 923.

The above standards hold even when, as here, a defendant challenges a court's jurisdiction. *See, e.g., Warth*, 422 U.S. at 501; *York Ctr. Park Dist. V. Krilich*, No. 89-6000, 1993 WL 114628, at *4 (N.D. Ill. Apr. 13, 1993) (finding that plaintiff had standing based on allegation that her property was "damaged by the illegal activities of the [d]efendants."). *See also Sanner v. Bd. of Trade of the City of Chgo.*, 62 F.3d 918, 925 (7th Cir. 1995) ("[b]ecause the [defendant] challenged the farmers' standing with a motion to dismiss, we must accept the farmers' factual allegations and resolve any doubts in their favor."); *Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995) (Rule 12(b)(1) motion).

**2.    Plaintiffs have standing to sue for violations of the Equal Protection Clause**

*Plaintiffs satisfy the applicable pleading requirements*

Standing to bring an equal protection claim does not require an "injury" apart from the Equal Protection violation. *See Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F. 3d 1216, 1221 (7th Cir. 1994). *See also Ritzel v. Milwaukee County*, 103 Fed. Appx. 7, 2004 WL 1435261 (7th Cir. 2004); *Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, *3 at n2 (N.D. Ill. June 25, 2007) (a plaintiff "has standing in federal court as long as he alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

In this case, Defendant violated Plaintiffs' Equal Protection rights by intentionally treating Plaintiffs differently from others similarly situated with no rational basis. *See*

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (a plaintiff states a claim for violation of the Equal Protection clause of the Fourteenth Amendment "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment"); *Messner*, 2007 WL 1832116, *3 at n2.

"For purposes of ruling on a motion to dismiss for want of standing…courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth*, 422 U.S. at 501. The allegations of the Complaint establish standing:

- Lake County *intentionally treated Plaintiffs and the Class differently* from others *similarly situated* by refusing to use Public Works funds for the capital improvements to the Water System required by IEPA. (Complaint attached as Exhibit A).

- Lake County's refusal to use Public Works funds for construction of the replacement water system is *arbitrary and irrational*. (Id. at ¶30).

- Lake County's treatment of Plaintiffs and the proposed class is *not rationally related to a legitimate governmental interest*. (Id. at ¶31).

Taken as true, as they must be for purposes of the current Motion, *Warth*, 422 U.S. at 500, the allegations of the Complaint establish that Plaintiffs have standing to bring their equal protection claim against the County.  *Olech*, 528 U.S. at 564.

### *Defendant's numerous dismissal arguments are not persuasive*

Defendant claims that: (1) Plaintiffs have not suffered any injury; (2) this case is not ripe; (3) an Illinois statute requires that an ordinance be passed before Defendant could charge Plaintiffs for replacement of the water system; and (4) Plaintiffs' Equal Protection claim is just a "repackaging" of Plaintiffs' breach of contract claim.  Each one of these arguments is addressed as follows:

4

A.    Plaintiffs have suffered an injury

Defendant asserts that Plaintiffs have not suffered an "injury"; however, "[t]he Equal Protection clause, unlike the due process clause, does not require a showing of injury other than the denial of equal protection itself to confer standing in federal court." *Messner*, 2007 WL 1832116 at n2.

B.    The case is ripe

Defendant also claims that this case is not "ripe", but this defense argument is contradicted by the Complaint:

- "Lake County is obligated to make improvements to the Water System required by IEPA" (Ex. A at ¶22).

- "IEPA has required that Lake County replace the Water System" (Id. at ¶23)

- "Lake County refuses to use Public Works funds to pay for the cost of constructing the replacement water system." (Id. at ¶26)

- "Lake County insists that Plaintiffs and the proposed class pay for the cost of constructing the replacement water system." (Id. at ¶27)

- "Plaintiffs and the proposed class have been damaged by Lake County's refusal to use monies from the Public Works fund to pay for the cost of constructing the replacement water system. Lake County's resolution that Plaintiffs and the proposed class must pay for the required improvements has caused delay in the completion of the replacement water system; and Plaintiffs and the proposed class have suffered property damages as a result of Lake County's refusal to make the improvements to the water system required by IEPA." (Id. ¶ 32).

In addition to the allegations of the Complaint, Defendant has stated repeatedly that Plaintiffs will pay for the replacement water system required by IEPA:

- January 30, 2008 letter to residents—estimated cost of the water system is $4,201,416 or $18,756 per customer; property owners may pay a lump

5

sum or make a surcharge payment over a 30-year period; "the County is
well underway with design of the new water main system necessary to
provide potable water to the Hawthorn Woods – Glennshire service area."
(Exhibit B);

- May 12, 2008 letter from Director of Public Works, Peter E. Kolb—
replacement of the water system is "required"; "residents will pay for the
new Code-compliant public water system"; and with the exception of a
$1,000,000 "contribution" Lake County will not use Public Works funds
to pay for the improvements to the water system. (Exhibit C);

- The County's June 2008 Third-Party Complaint—residents' failure or
refusal to pay for the cost of constructing the new water system
"constitutes a breach of contract" and presents a "controversy" requiring a
declaration of the rights of the parties. (Exhibit D at ¶¶ 210 & 211).[1]

C.    Defendant's reliance on 55 ILCS 5/5-15021 is misplaced

55 ILCS 5/5-15021 states that rates and charges (including connection charges)
will be set forth in County ordinances. This case is not about water rates or connection
charges. The statute does not say anything about whether Defendant must use its Public
Works Fund to pay for the replacement water system or whether Defendant may charge
Plaintiffs for the capital improvements required by IEPA.[2]

D.    Plaintiffs are not premising jurisdiction on the Contract

Federal question jurisdiction is based on the Equal Protection violations (Ex. A ¶
6) set forth in Count I of the Complaint. This Court has supplemental jurisdiction over
the breach of contract claim set forth in Count II (Ex. A ¶ 7).

Count I is not a "repackaging" of Count II, as Defendant puts it. Count I alleges
*inter alia* "Lake County's refusal to use Public Works funds for the construction of a

---

[1] Defendant's Third-Party Complaint was filed after Plaintiffs filed the Complaint in this case. Plaintiffs
are not a party to that case.
[2] Defendant's reliance on *Associated General Contractors of America v. City of Columbus*, 172 F. 3d 411
(6th Cir. 1999), is also misplaced. In that case, the parties were seeking an advisory opinion about whether
a proposed code was constitutional. 172 F.3d at 421.

replacement water system is contrary to the policy or custom of Lake County to use Public Works funds to pay for capital improvements for other County residents; is further arbitrary, irrational, unreasonable, and unrelated to any legitimate government interest; and was made by the policy-making official(s) and/or employee(s) of the Defendant, Lake County." (Ex. A ¶ 45).   Count II alleges *inter alia* Lake County breached the contract when it: failed to properly maintain and operate the system; and failed to make improvements required by IEPA. (Id. ¶  59 (a) & (b)).

**3.      The Tax Injunction Act has no application in this case**

Defendant's cursory analysis of the Tax Injunction Act completely ignores the allegations of the Complaint and the test for determining what constitutes a "tax".  The Complaint alleges that "Lake County has already declared and resolved that the required replacement of the water system will be paid for by the residents, and not with monies from its Public Works fund." (Ex. A at p. 2).  The term "tax" is not in the Complaint. Plaintiffs are not seeking to enjoin Defendant from assessing a "tax". Instead, what the Complaint seeks is to "enjoin Lake County from discriminately charging Plaintiffs and the proposed class for the cost of constructing the replacement water system" and that the "improvements required by IEPA...be paid with monies from the Lake County Public Works fund."  (Id).  Because the allegations in the Complaint are taken as true and Defendant has submitted absolutely nothing in support of its motion (on this or any other issue), there are no grounds upon which this Court could conclude that Plaintiffs' Complaint seeks to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law".

Defendant also fails to analyze the distinction between a "tax" and a "fee", for purposes of applying the Tax Injunction Act. "Courts faced with distinguishing a 'tax' from a 'fee' 'have tended ... to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's cost of regulation.'" *Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996) (quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir.1992)).

Here, Defendant is charging Plaintiffs and the proposed Class to cover the cost of the replacement water system required by IEPA.  (Ex. B).  This is purely an act of regulatory compliance. The charge costs only Plaintiffs and the proposed class and is for a water system which serves only Plaintiffs and the proposed class.

In *Hager*, the Court of Appeals reversed the district court's dismissal of the plaintiffs' complaint under 28 U.S.C. § 1341.  The *Hager* court reversed because the district court erroneously held that the imposed fee was a "tax".  The *Hager* Court's rationale was as follows:

> "If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation."

*Hager*, 84 F.3d at 870.

As a result, under *Hager*, the charge is a fee and not a tax because: the revenue is generated exclusively from Plaintiffs and the proposed Class; the revenue will be used for

replacement of Plaintiffs' and the proposed Class' water system only; and the revenue defrays Defendant's cost of meeting IEPA's requirements[3].

*McLeod v. Columbia County Georgia*, 254 F. Supp. 2d 1340 (S.D. Ga. 2003) (cited by Defendant at p. 6 of its brief), supports why the surcharge in this case is a "fee" and not a "tax". The court in *McLeod* followed the test set forth in the *San Juan* case (*supra*). Under this test a court should consider three factors in its determination of whether the challenged charge is a "fee" or a "tax": (1) what entity imposed the charge; (2) what parties are being assessed the charge; and (3) is the revenue generated by the charge expended for general public purposes or used for the regulation and benefit of the parties upon whom the assessment is imposed. *McLeod*, 254 F. Supp. 2d at 1345 *citing San Juan*, 967 F.2d at 685.

The court's analysis of these factors in *McLeod*, when compared with the allegations of the Complaint and evidentiary materials in this case, demonstrates why the defense Tax Injunction Act arguments should be rejected:

    A.    Who imposed the charge? In *McLeod* and here the answer is a legislative body, and not a regulatory agency.

    B.    Who assessed the charge? In *McLeod*, the charge was assessed against over 90% of the population. 254 F. Supp. 2d at 1346. Here, the challenged charge involves only 672 residents (Ex. A ¶ 35) in all of Lake County (which has a population of over 700,000, Lake County Fact Sheet, attached as Exhibit E).

---

[3]None of the cases cited by Defendant are contrary to *Hager*, or require dismissal of Plaintiffs' Complaint. *See, e.g., Levy v. Pappas*, 510 F. 3d 755 (7th Cir. 2007) (the plaintiff's complaint was about the unfairness of Cook County's tax refund process); *Hay v. Indiana State Board of Tax Commissioners*, 312 F. 3d 876 (7th Cir. 2002) (Indiana law provided an adequate remedy for the plaintiffs' complaint that real estate tax assessment methods were unfair); *Platteville Area Apartment Assoc. v. City of Platteville*, 179 F. 3d 574 (7th Cir. 1999) (the plaintiffs admitted the fee at issue was a "tax"); *Jefferson Development Group, Inc. v/ Georgetown Municipal Water & Sewer Service*, No. 07-130-KSF, 2008 WL 687193 (E.D. Ky. March 10, 2008) (the plaintiffs admitted the challenged "tap fee" was a "tax").

C.    <u>Whom does the revenue benefit?</u>  This question involves "whether [the use of the disputed revenue] provides a *general benefit to the public*, of a sort *often financed by a general tax*, or whether it provides more narrow benefits to regulated companies or defrays [an] agency's costs of regulation." *McLeod*, 254 F. Supp. 2d at 1347-48 quoting *San Juan*, 967 F. 2d at 685 (bracketed material and emphasis in *McLeod*).  In *McLeod*, the charge was for stormwater management which benefited "every member of the public".  To the contrary, here, the charge is simply to defray the cost the County must pay for construction of the new water system.  (Ex. B) The new water system required by IEPA is solely for the Plaintiffs and individuals residing in the proposed class (Ex. A ¶¶ 10 & 23); it is not a capital improvement that benefits other Lake County public water customers.

Thus, the *San Juan* factors, as analyzed by the court in *McLeod*, actually compel a result contrary to that sought in the defense motion.  Application of the 3 *San Juan* factors demonstrates that the surcharge in this case is a "fee" and not a "tax".[4]

**4.    The Johnson Act has no application in this case**

The Johnson Act does not strip this Court of subject matter jurisdiction over Plaintiffs' claims.  28 U.S.C. § 1342 states in relevant part:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision…

---

[4] *Trading Co. of North America, Inc. v. Bristol Township Authority*, 47 F.Supp.2d 563 (E.D.Pa. 1999), is distinguishable for this same reason.  Just like in *McLeod*, on balance when the *San Juan* factors were applied to the evidence in the *Bristol Township* case, the charge was more like a "tax" than a "fee" (i.e., the charge was (1) made by the legislature, (2) levied against a broad group of individuals, and (3) benefited the public generally).

Defendant cannot establish the application of this statute for several reasons. Foremost, there is no "order" in this case. The Complaint does not allege that Defendant is charging Plaintiffs for the water system pursuant to an "order". At least one court in this judicial district has been unwilling to stretch the allegations of a plaintiff's complaint when analyzing the applicability of the Johnson Act. *See e.g. Phillips Towing Service, Inc. v. Bushnell*, 719 F. Supp. 1428, 1431 (N.D.Ill. 1989).

In *Bushnell*, the plaintiffs challenged an Illinois statute that fixed the maximum price plaintiffs could charge their customers. The defendants sought dismissal of the plaintiffs' claims (including a claim for violation of the Equal Protection clause of the Fourteenth Amendment) under the Johnson Act. The court denied the defendants' motion and accepted the plaintiffs' argument that their constitutional challenge was not attacking an "order affecting rates." 719 F. Supp at 1431. "Rather than construe the Amended Complaint at this early stage of this case as attacking an ICC determination to set a reasonable rate at $45.00-a decision which would be an "order affecting rates"-this court will take the towers at their word." *Id.*

In addition, Defendant does not provide any evidentiary basis upon which this Court could conclude that there is an "order affecting rates" in this case. Defendant has not attached an "order" or submitted any other evidentiary materials for the Court's consideration.

The purposes of the Johnson Act would not be served by applying it in this case either. "[T]he Johnson Act…envisaged, primarily, a controversy with a state agency on one side and a public utility on the other, and the act sought to safeguard the orders of the state agency." *Connett v. City of Jerseyville*, 125 F.2d 121, 125 (7th Cir. 1942). *See also,*

*Shrader v. Horton*, 471 F. Supp. 1236, 1239 (W.D. VA 1979) ("Congress' purpose was to channel normal rate litigation into the state courts while leaving the federal courts free in the exercise of their equity powers to relieve against arbitrary action.")  This case does not involve any controversy between a state agency and a public utility over water rates, and does not fall within the purpose of the Johnson Act.

In *Shrader* the court held that an ordinance which required that the plaintiffs connect to the public water system was not an "order affecting rates".  125 F. Supp. at 1239.  The court rejected the defendant's "untenable" argument that mandatory connection affected rates because the number of public water system users ultimately affects the per user monthly charge. The *Shrader* court relied upon *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341 (1951) (Alabama Public Service Commission order that required railroad to continue service in the public interest, though at a financial loss to the railroad, was not an "order affecting rates").  The court reasoned that "surely the railroad's having to continue unprofitable rail service would ultimately bear on the rates charged the public in much the same way that the number of water users would affect the monthly water rate." 471 F. Supp. at 1239.  "Yet the Court plainly stated that the Johnson Act did not apply to the railroad case, and this court in ruling on defendants' motion to dismiss feels compelled to follow the Supreme Court's lead." *Id.*

In this case, there is no "order affecting rates", and the *Shrader* case illustrates that enjoining a defendant from arbitrary conduct does not "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates" simply because the desired injunction would cause the defendant a financial burden (such as limiting the number of public water system users in *Shrader* or requiring the number of train routes

for passengers in the *Southern Railway* case). *See also Cody v. Union Electric Co.*, 454 F.2d 610, 612 (8th Cir. 1976) (Missouri Public Service Commission Order requiring that African-Americans provide a larger utility deposit was not an "order affecting rates").

Finally, because there is not an "order affecting rates" in this case, Defendant cannot satisfy each one of the elements required for the Johnson Act to divest this Court of jurisdiction:

- "Jurisdiction is based solely on diversity of citizenship or ***repugnance of the order*** to the Federal Constitution" (28 U.S.C. § 1342(1));

- "The ***order*** does not interfere with interstate commerce" (28 U.S.C. § 1342(2)) (emphasis added);

- "The ***order*** has been made after reasonable notice and hearing" (28 U.S.C. § 1342(3) (emphasis added); Defendant does not even claim that there has been a notice, hearing, or an order. <u>By concession</u> (Defendant at page 7 of its brief says "the order establishing the surcharge (***which has yet to be issued***)" and "the rate order ***will be made*** after reasonable notice and hearing") <u>Defendant cannot establish §1342(3)</u> (emphasis added)[5]; and

- Since Defendant cannot establish § 1342(3), let alone §§ 342 (1) or (2), the Court does not need to address whether "a plain, speedy and efficient remedy may be had in the courts of such State" (28 U.S.C. §1342(4)).

## 5.     The Contract does not furnish a rational basis

"The liberal requirements of notice pleading under Rule 8" apply "particularly with regard to Equal Protection Claims." *Brown*, 398 F. 3d at 916 ("[P]laintiff need not

---

[5] Defendant's concession that there is no "order" in this case also distinguishes the cases Defendant relied upon in its brief. *See, e.g. Norman Apartment Assoc. v. City of Norman*, 64 Fed. Appx. 166, 167-68 (10th Cir. 2003) (ordinance which contained a $5 surcharge for connection to the municipal water and sewer systems was an "order affecting rates" where "the surcharge was included within the rate structure of the City of Norman"); *Beechwood Devp., LLC v. Olympus Terrace Sewer Dist.*, No. C05-0745, 2005 WL 2573331, * 2 (Oct. 12, 2005) (Sewer District submitted evidence that revenues from charges had a "direct and measurable impact on 'service rates'"; here, not only is there no "order" or ordinance, but also Defendant has submitted nothing that would allow the Court to even analyze how charging Plaintiffs for the cost of a new water system would have a "direct and measurable" impact on water rates); *Trading Co. of North America, Inc. v. Bristol Township Authority*, 47 F. Supp. 2d 563, 574 (E.D. Pa. 1999) (where the plaintiff admitted there was an "order" but sought to enjoin the defendant from "the illegitimate application of that order").

show anything to survive a motion under Rule 12(b)(6)-he need only allege").[6]  Here, Plaintiffs have alleged that Defendant intentionally and irrationally treated them differently than others similarly situated.  (Ex. A ¶¶ 30-32).  Under *Brown*, Defendant's alleged rational basis (i.e., the existence of a contract) must be rejected because of the allegations set forth in the Complaint. 398 F. 3d at 916-17.  *See also Vincent*, 485 F.3d at 923 ("Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)").

Furthermore, the language of Section 6 of the Contract (which Defendant cites) clearly and unambiguously applies to expansion and improvement of the County Water System within the Village of Hawthorn Woods.  (Ex. A).  Here, the required capital improvement at issue is the ***replacement*** of the water system by IEPA, not the expansion of the County system within the Village of Hawthorn Woods.

## IV.
## CONCLUSION

WHEREFORE, Plaintiffs pray for the entry of an Order: (a) denying Defendant's Motion to Dismiss; and (b) awarding such other and further relief for Plaintiffs as the Court deems equitable and just.

---

[6] Each one of the cases Defendant relies upon was decided based on distinctive allegations or evidence which is not present in this case. *See, e.g., Smith v. City of Chicago*, 457 F.3d 643 (7th Cir. 2006) (after an 8 day bench trial there was evidence that the City of Chicago "has a legitimate interest in defending the validity of its ordinances against legal challenge" and that "it is entirely rational for a municipality to decline to subsidize litigation that seeks to invalidate a duly enacted ordinance..."); *Lamers Dairy, Inc. v. United States Dept. of Ag.*, 379 F. 3d 466 (7th Cit. 2004) (evidence submitted in summary judgment briefing demonstrated that Department of Agriculture had a rational basis for treating handlers of milk differently than handlers of cheese); *Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996)(ordinance which required that heavy trucks pay fees to use city streets was rationally related to legitimate governmental interest in maintaining public roads; *520 S. Michigan Assoc. Ltd. v. Shannon*, No. 06 C 4552, 2007 WL 2728757 (N.D.Ill. Sept. 17, 2007) (in its complaint the plaintiff alleged that an amendment to an Illinois statute violated the plaintiff's equal protection rights; however, "***the Hotel does not include any allegations at all to support this claim***") (emphasis added).

14

Dated:          August 21, 2008

Respectfully submitted

By:_____/s/ Aaron W. Rapier_____
One of Plaintiffs' attorneys

Shawn M. Collins
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **Plaintiffs' Response to Defendant's Motion to Dismiss** was electronically served on all counsel of record as a result of the CM/ECF filing of this document, on August 21, 2008:

By:  /s/ Aaron W. Rapier
     One of Plaintiff's Attorneys

Shawn M. Collins
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595