IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER DONOVAN, AMANDA DONOVAN, ROBERT COOPER, AND MARY COOPER,** Individually and on Behalf of All Persons Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 3098 |
| v. | ) ) | Judge Joan Humphrey Lefkow |
| **COUNTY OF LAKE**, a Body Politic and Corporate of the State of Illinois, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY JUDGMENT**

*A.*    ***The Parties***

1.    Plaintiffs, Amanda and Christopher Donovan, are Illinois citizens, residing at 9 Croydon Road, Hawthorn Woods, Illinois. (Complaint ¶ 1, attached as Exhibit 1; Declaration of Christopher Donovan ¶1, attached as Exhibit 2).

2.    Plaintiffs, Mary and Robert Cooper, are Illinois citizens, residing at 101 Old McHenry Road, Hawthorn Woods, Illinois. (Ex. 1, ¶ 2).

3.    Defendant, County of Lake, is a body politic and corporate duly organized and existing under the laws of the State of Illinois. (Ex. 1, ¶ 3).

*B.*    ***Venue and Jurisdiction[1]***

4.    This Court has personal jurisdiction over Defendant, as Defendant is a citizen of the State of Illinois. (Ex. 1, ¶ 5).

5.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States of America; specifically Count I

---

[1] Lake County has moved for dismissal of the Complaint, on the grounds that this Court does not have subject matter jurisdiction. (Document 20; filed 7/21/08).

is predicated upon violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983. (Ex. 1, ¶ 6).

6.      This Court has supplemental jurisdiction over the Illinois state law claims set forth in Count II, pursuant to 28 U.S.C. § 1367, as all claims involve substantially overlapping evidence and witnesses, involve the same events or connected series of events, and are otherwise so related to the Plaintiffs' federal question claims that they form part of the same case or controversy under Article III of the United States Constitution. (Ex. 1, ¶ 7).

7.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions occurring at, and pertaining to property located in, Lake County, Illinois, within this judicial district. (Ex. 1, ¶ 8).

## C.   *Material Facts*

8.      On October 21, 1975, County of Lake, Illinois entered into a contract entitled "An Agreement for Water Supply and Operation with the Village of Hawthorn Woods" (the "Contract").

9.      A fair and accurate copy of the Contract is attached as Exhibit 3.

10.     The Contract states, *inter alia*, that the "County agrees to take over operation and maintenance of the existing water system…" (Ex. 3, p. 2).

11.     Lake County is the owner and operator of the water system in the Glennshire subdivision of Hawthorn Woods, Illinois.  (Defendant's Answer and Affirmative Defense in Case No. 06 CH 2569, attached as Exhibit 4, ¶ 5).[2]

12.     Plaintiffs reside in the Glennshire subdivision of Hawthorn Woods, Illinois. (Ex. 2 ¶¶ 2 & 3).

13.     The source of Plaintiffs' residential water is the water system owned and operated by Lake County.  (Ex. 4, ¶ 4).

---

[2] The Complaint in Case No. 06 CH 2569 is also attached to Exhibit 4 for ease of reference.

14.    The Contract states, *inter alia*, "For the cost of operating, maintaining, payment to the Village for retirement of debt and improvements, the County shall bill the individual customers on a quarterly basis as per Exhibit 'C'. These rates and charges are subject to change as may be necessary or feasible by rising or lowered cost of operation and construction." (Ex. 3, p. 3).

15.    Lake County's ownership and operation of the water system in the Glennshire subdivision are pursuant to and subject to the terms of the Contract. (Ex. 4, at ¶ 5).

16.    The Contract states, *inter alia*, that the County will "make the necessary improvements to the water system as may be required by the Illinois E.P.A." (Ex. 3, p. 2).

17.    Replacement of the Glennshire water system is required by Illinois E.P.A. (May 12, 2008 letter from Lake County Department of Public Works Director, Peter E. Kolb, attached as Exhibit 5).

18.    In a May 12, 2008 letter to Christopher Donovan, the County represented that "[Glennshire] residents will pay for the new Code-compliant water system." (Exhibit 5).

19.    In Case No. 06 CH 2569, Lake County pled in its Third-Party Complaint that "the County has continuously advised both the Village and HWG area residents that a County-owned and operated new HWG WS would be constructed using subordinate revenue bonds, serviced by a surcharge on HWG WS user bills." (Third-Party Complaint, Case No. 06 CH 2569, attached as Exhibit 6, ¶206).

20.    Section 6 of the Contract states:

        SECTION 6.    <u>Expansion and Improvement of the County Water System</u>.    The County shall expand and improve these facilities when the need arises for expansion of the Lake County Water System within the Village of Hawthorn Woods.    The County will from time to time issue revenue bonds to expand and improve the water supply facilities.    Said revenue bonds shall be retired by funds derived from the System. (Ex. 3, p. 4).

21.    In the last sentence of Section 6 of the Contract, someone has apparently printed "local" between the words "the" and "System." (Ex. 3, p. 4).

22.    The Contract states, *inter alia*, "The Village, also agrees to pass an ordinance requiring all persons, firms, and corporations to connect to the system in the future if the water system is within two hundred (200) feet of their building, excepting existing private wells and other water systems." (Ex. 3, p. 2).

23.    The Contract states, *inter alia*, "The Village further agrees that it will refrain from operating or installing any water system in competition with County local facilities within the Village." (Ex. 3, p. 2).

24.    The Contract states, *inter alia*, "the public health, welfare, and safety of the residents of the Village and the residents of the County require the development of coordinated and adequate systems of water supply and operation." (Ex. 3, p. 1).

25.    The Contract further states, *inter alia*, "the County has a plan to integrate the Village's water system into the County's water system; and to carry out the proposed plan of the County and perform its authorized function and to provide for the water supply from the Customers into the County System, it is necessary that an Agreement now be entered into establishing certain rights and duties of the parties incident thereto." (Ex. 3, pp. 1 & 2).

Dated: August 25, 2008                         Respectfully submitted,

                                               By: /s/ Aaron W. Rapier_____
                                                      One of Plaintiffs' attorneys

Shawn M. Collins
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER DONOVAN, AMANDA )
DONOVAN, ROBERT COOPER, AND )
MARY COOPER, Individually and on )
Behalf of All Persons Similarly Situated, )
            )
       Plaintiffs, )
            )
      v. )
            )
COUNTY OF LAKE, a Body Politic and )
Corporate of the State of Illinois, )
            )
       Defendant. )

Case No.

FILED: MAY 29, 2008
08CV3098          TC
JUDGE LEFKOW
MAGISTRATE JUDGE VALDEZ

### COMPLAINT

NOW COME Plaintiffs, CHRISTOPHER DONOVAN, AMANDA DONOVAN, ROBERT COOPER, AND MARY COOPER, Individually and on Behalf of All Persons Similarly Situated, by and through their attorneys Shawn M. Collins, Aaron W. Rapier, and Julie B. Anderson, and The Collins Law Firm, P.C., and for their Complaint against Defendant, County of Lake, a Body Politic and Corporate of the State of Illinois, state as follows:

### NATURE OF THE CASE

This lawsuit is about the impacts on Plaintiffs and their approximately 670 neighbors who are consumers of the Lake County water system in Hawthorn Woods, Illinois. Lake County's operation and maintenance of this water system was so grossly inadequate that in 2006 the State of Illinois sued the County and demanded that Lake County make improvements to the water system required by the Illinois Environmental Protection Agency as necessary to prevent the exposure of Plaintiffs and their neighbors to potentially dangerous levels of bacteria. Such improvements include construction of a replacement water system for Plaintiffs and the proposed

EXHIBIT

1

class. Lake County has already declared and resolved that the required replacement of the water system will be paid for by the residents, and not with monies from its Public Works fund.

This lawsuit seeks, *inter alia*, to enjoin Lake County from discriminately charging Plaintiffs and the proposed class for the cost of constructing the replacement water system, and thereby violating their rights to the equal protection of the laws. The improvements required by IEPA in this instance should be paid with monies from the Lake County Public Works fund, as this fund has been used by the County to pay for other capital improvements under comparable circumstances. There is no legitimate reason for the County's arbitrary refusal to use Public Works funds for the capital improvements required of this system.

## PARTIES

1.      Plaintiffs, Amanda and Christopher Donovan, are and, at all times material hereto, were Illinois citizens, residing at 9 Croydon Road, Hawthorn Woods, Illinois.

2.      Plaintiffs, Mary and Robert Cooper, are and, at all times material hereto, were Illinois citizens, residing at 101 Old McHenry Road, Hawthorn Woods, Illinois.

3.      Defendant, County of Lake, is a body politic and corporate duly organized and existing under the laws of the State of Illinois.

4.      Since 1975 Lake County, operating through the Lake County Department of Public Works, has been – and is – the owner and operator of the County water system in the Village of Hawthorn Woods, Lake County, Illinois.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendant, as Defendant is a citizen of the State of Illinois.

6. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States of America; specifically Count I is predicated upon violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the Illinois state law claims set forth in Count II, pursuant to 28 U.S.C. § 1367, as all claims involve substantially overlapping evidence and witnesses, involve the same events or connected series of events, and are otherwise so related to the Plaintiffs' federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions occurring at, and pertaining to property located in, Lake County, Illinois, within this judicial district.

## FACTUAL ALLEGATIONS

9. Plaintiffs and other individuals in the proposed class reside in the Village of Hawthorn Woods, Lake County, Illinois.

10. Plaintiffs and the proposed class receive their residential water from a distribution system owned and operated by Lake County ("the Water System").

11. The Water System has 224 direct service connections and serves approximately 672 residents. The Water System consists of 20 shallow wells. The water is stored in underground hydropneumatic tanks.

12. The Water System includes pipes, storage tanks, and pumps that are used to distribute water to Plaintiffs and the proposed class.

3

13.    Lake County whose Water System serves a population of approximately 672 must take at least one total coliform sample per month from the Water System.

14.    Total coliform is a group of closely related bacteria that is an indicator of other, potentially harmful pathogens that can be present in water.

15.    Total coliform bacteria serve as an indicator of the efficiency of water treatment as well as the integrity of the pipes in the distribution system, and as a screen for the presence of fecal coliform.

16.    Analytical testing performed by Lake County revealed that total coliform was present in the Water System.

17.    Chlorine is a disinfectant chemical that can destroy bacteria including coliform in water.

18.    Testing performed by IEPA demonstrated there was no chlorine present in the Water System on the date of the inspection.

19.    Lake County was responsible for operating and maintaining the Water System. This responsibility included maintenance of the Water System in such a way that total coliform would not be present, and that chlorine would be present above the residual value of .2 mg/l.

20.    The Attorney General of the State of Illinois brought a lawsuit against Lake County for violations of the Illinois Administrative Code.

21.    The Attorney General's lawsuit involved the presence of total coliform and the absence of chlorine in the Water System.

22.    Pursuant to a written agreement with the Village of Hawthorn Woods, Lake County is obligated to make improvements to the Water System required by IEPA.

23.    IEPA has required Lake County to replace the Water System.

4

24.    The Attorney General's lawsuit against the County does not involve who must pay for the construction of the replacement water system.

25.    The Attorney General's lawsuit also does not address the issue of whether Plaintiffs and the proposed class should pay a surcharge to cover the cost of constructing the replacement water system, or whether Lake County must pay for the construction with monies from its Public Works fund.

26.    Lake County refuses to use Public Works funds to pay for the cost of constructing the replacement water system.

27.    Lake County insists that Plaintiffs and the proposed class pay a surcharge for the cost of constructing the replacement water system.

28.    Lake County has used Public Works funds to pay for capital improvements made to the County water system(s) which serve(s) residents similarly situated to Plaintiffs and the proposed class.   The County has used monies from the Public Works fund to make capital improvements in/on: Wildwood, Pekara, Vernon Hills, Countryside Lake, South Bradley Road, Grandwood Park, and Oak Terrace.

29.    Lake County has used millions of dollars from its Public Works fund for capital improvements made to the County water system(s) which serve(s) residents in/on: Wildwood, Pekara, Vernon Hills, Countryside Lake, South Bradley Road, Grandwood Park, and Oak Terrace.

30.    Lake County's resolution and refusal to use Public Works funds to pay for the cost of constructing the replacement water system for Plaintiffs and the proposed class is arbitrary and irrational.

31.     Lake County's treatment of Plaintiffs and the proposed class is not rationally related to a legitimate governmental interest.

32.     Plaintiffs and the proposed class have been damaged by Lake County's refusal to use monies from the Public Works fund to pay for the cost of constructing the replacement water system. Lake County's resolution that Plaintiffs and the proposed class must pay for the required improvements has caused delay in the completion of the replacement water system; and Plaintiffs and the proposed class have suffered property damages as a result of Lake County's refusal to make the improvements to the water system required by IEPA.

**CLASS ALLEGATIONS**

33.     Plaintiffs bring each of the claims in this action in their own names and on behalf of a class of all persons similarly situated, pursuant to Rule 23, of the Federal Rules of Civil Procedure.

34.     The proposed class consists of all persons and non-governmental entities that own or reside at property in the Village of Hawthorn Woods whose water service is provided by Lake County ("the Class").

35.     The Class consists of individuals owning and/or residing at 224 homes, is comprised of approximately 672 residents, and is accordingly so numerous that joinder of all members is impractical.

36.     There are core questions of law and fact that are common to each member of the Class, such as:  whether Lake County has unlawfully discriminated against Plaintiffs and the Class, in violation of their constitutional rights, when it refused to use Public Works funds to pay for the cost of constructing the replacement water system; and whether Lake County breached its

contract with the Village of Hawthorn Woods when it failed to properly operate and maintain the Water System, and when it refused to pay for improvements required by IEPA.

37.     Plaintiffs' claims are typical of the claims of the Class.  All claims are based upon Defendant's common course of conduct.

38.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

39.     Plaintiffs have retained counsel who are competent and experienced in class action litigation, including class action experience in both federal and state court cases.

<u>COUNT I</u>
**42 U.S.C. § 1983**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**to the United States Constitution**

40.     Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference Paragraphs 1 through 39 of the Complaint, as if fully set forth herein.

41.     Lake County provides water service to various residents within the County.

42.     Lake County, in undertaking a duty to supply water to residents in the County, has a duty to supply water on a non-discriminatory basis.

43.     Lake County has a policy or custom of using Public Works funds to pay for capital improvements for other consumers, which are similar in all material respects to the Plaintiffs and the Class.

44.     Lake County intentionally treated Plaintiffs and the Class differently from other consumers by refusing to use Public Works funds for the capital improvements to the Water System required by IEPA.

45.     Lake County's refusal to use Public Works funds for the construction of a replacement water system is contrary to the policy or custom of Lake County to use Public Works funds to pay for capital improvements for other County residents; is further arbitrary, irrational, unreasonable, and unrelated to any legitimate government interest; and was made by the policy-making official(s) and/or employee(s) of the Defendant, Lake County.

46.     Lake County's unlawful actions have proximately caused damage to Plaintiffs and the Class.

47.     Lake County's actions have deprived Plaintiffs and the Class of their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the actions or inactions of Lake County were undertaken either with the intent to deprive Plaintiffs and the Class of their rights, or with reckless disregard of said rights.

48.     The actions or inactions of Lake County set forth above were carried out under color of state law.

49.     There is no adequate remedy at law for Lake County's violations of Plaintiffs' and the Class' constitutional rights, and a balancing of the equities and hardships of the parties strongly favors entering injunctive relief for Plaintiffs and the Class, and against Lake County.

### COUNT II
**Breach of Contract/Third Party Beneficiaries**

50.     Plaintiffs individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference Paragraphs 1 through 39 of the Complaint, as if fully set forth herein.

51.     Lake County entered into a contract with the Village of Hawthorn Woods on October 21, 1975. A copy of the Contract is attached as Exhibit A.

52.     The Contract obligated Lake County, *inter alia*: to:

    (a)     operate and maintain the Water System; and

    (b)     make improvements to the Water System required by IEPA.

53.     IEPA has required Lake County to make improvements to the Water System.

54.     IEPA has not required expansion of the Lake County Water System within the Village of Hawthorn Woods.

55.     The Attorney General's lawsuit involves replacement of the Water System.

56.     The Attorney General's lawsuit does not involve expansion of the Lake County System within the Village of Hawthorn Woods.

57.     Plaintiffs and the Class are intended third-party beneficiaries of the Contract.

58.     Plaintiffs and the Class are entitled to assert certain rights set forth in the Contract.  Among them are the rights to:

    (a)     a properly operated and maintained Water System; and

    (b)     a Water System with improvements required by IEPA.

59.     Lake County breached the contract when it:

    (a)     failed to properly maintain and operate the system; and

    (b)     failed to make improvements required by IEPA.

60.     Plaintiffs and the Class have been damaged by Lake County's breach(es) of the Contract.

WHEREFORE, Plaintiffs, individually and on behalf of all persons similarly situated, respectfully request that this Court:

    (a)     Certify this case as a class action and appoint the undersigned counsel as attorneys for the Class, and the named Plaintiffs as representatives of the Class;

(b)    Enter an Order forbidding Lake County from further unlawfully discriminating against the Class;

(c)    Award Plaintiffs and the Class damages in an amount to be determined by the trier of fact;

(d)    Award Plaintiffs and the Class their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law, as warranted;

(e)    Order that Lake County specifically perform its obligations as set forth in the Contract; and

(f)    Grant Plaintiffs and the Class such other and further relief as the Court deems equitable and just.

Dated: May 29, 2008

Respectfully submitted,

**CHRISTOPHER DONOVAN, AMANDA DONOVAN, ROBERT COOPER, AND MARY COOPER,** Individually and on Behalf of All Persons Similarly Situated,


By:    /s/ Aaron W. Rapier
       One of Plaintiffs' Attorneys

Shawn M. Collins
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595

Auditor
Public Works
Genl Acctg.

STATE OF ILLINOIS )
                  ) SS
COUNTY OF LAKE )

COUNTY BOARD, LAKE COUNTY, ILLINOIS

ADJOURNED ANNUAL SEPTEMBER, 1975 SESSION

OCTOBER 14, A.D., 1975
21

MR. CHAIRMAN AND MEMBERS OF THE COUNTY BOARD:

Your Public Service Committee presents herewith a Resolution,

providing for the execution of an agreement between the Village of Hawthorn Woods

and Lake County for the acquisition of their water system; and requests its adoption.

Respectfully submitted,

_____
CHAIRMAN

_____
VICE-CHAIRMAN

_____


_____


_____

Certified to be a true copy of
Records of the Lake County
Board Meeting of

OCT 21 1975     APPROVED          PUBLIC SERVICE COMMITTEE

Certifi
of Lak
 E

#2

EXHIBIT A

## RESOLUTION

WHEREAS, the Board of Supervisors of Lake County, Illinois, had established the Lake County Public Works Department to facilitate and coordinate the overall growth and development of Lake County; particularly with pollution control, abatement and supply of water; and

WHEREAS, the County of Lake is authorized under the provisions of the Public Works Act as adopted July 22, 1959, and as amended, to construct, maintain and operate pollution control devices as well as water supply facilities; and

WHEREAS, the public health, welfare and safety of the residents of Lake County requires the development of a regional water supply system; and

WHEREAS, the Public Works Department has the ability and personnel to maintain and operate the Hawthorn Woods water system for the Village of Hawthorn Woods; and

WHEREAS, the Village of Hawthorn Woods has expressed a desire for the Lake County Public Works Department to take over the operation of the system; and

WHEREAS, the Village of Hawthorn Woods is willing to upgrade the system to meet the Lake County Public Works Department's standards; and

WHEREAS, the Village of Hawthorn Woods has passed a resolution and signed an agreement to this effect; and

WHEREAS, the Public Service Committee has reviewed this agreement, copy attached hereto and made a part hereof, and recommends that the County of Lake enter into an agreement with the Village of Hawthorn Woods to acquire the Hawthorn Woods water system.

NOW, THEREFORE, BE IT RESOLVED, by this County Board of Lake County, Illinois, that the Chairman of the Board and the Clerk of said County, be and they are hereby authorized and directed to execute the attached agreement between the Village of Hawthorn Woods and the County of Lake for the acquisition of the Hawthorn Woods water system.

DATED, at WAUKEGAN, LAKE COUNTY, ILLINOIS, on this 14th day of October, A.D., 1975.

#2

## AGREEMENT FOR WATER SUPPLY AND OPERATION

THIS AGREEMENT, made and executed this _21st_ day of
_October_____, 19_75_, between VILLAGE OF HAWTHORN
WOODS, ILLINOIS, a municipal corporation of the State of Illinois,
hereinafter referred to as the "Village", and the COUNTY OF LAKE,
ILLINOIS, hereinafter referred to as "County".

WITNESSETH:

WHEREAS, the public health, welfare and safety of the residents
of the Village and the residents of the County require the develop-
ment of coordinated and adequate systems of water supply and opera-
tion; and

WHEREAS, County has established a Department of Public Works
pursuant to an Act of the General Assembly of the State of Illinois
entitled, "An Act in Relation to Water Supply, Drainage, Sewage,
Pollution and Flood Control in Certain Counties", approved July
22, 1959, and as amended August 1, 1961, for the purpose of per-
forming public works functions of water supply and operation; and

WHEREAS, the Village owns and operates a water system within
its Village limits; and

WHEREAS, the Village has an outstanding mortgage of $15,549.36
on the water system; and

WHEREAS, the County has the ability to operate and maintain
a water and sewer system; and

WHEREAS, the County owns and operates an existing water system
with the Village of Hawthorn Woods; and

WHEREAS, the County has a plan to integrate the Village's
water system into the County's water system; and

WHEREAS, to carry out the proposed plan of the County and
perform its authorized function and to provide for the water supply
from the Customers into the County System, it is necessary that an

-1-

Agreement be now entered into establishing certain rights and duties of the parties incident thereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein it is hereby agreed as follows:

SECTION 1.  Delivery and Acceptance of System.  From and after April 1, 1975, the Village agrees to transfer ownership of the existing water system as shown in Exhibit "A" to the County.  The Village, also agrees to pass an ordinance requiring all persons, firms, and corporations to connect to the system in the future if the water system is within two hundred (200) feet of their building, excepting existing private wells and other water systems.

The Village herein also agrees that all future water customers within its boundaries shall be serviced in like manner and bound by the County rules and regulations, except as to present water systems not purchased by the County of Lake.

The Village further agrees that it will refrain from operating or installing any water system in competition with County local facilities within the Village.

The County shall supply free water service to the Village Hall for use as a governmental body.  This is not intended to be free water service to apartments adjoining the Village Hall.  The County of Lake shall also furnish free water should any fire hydrants be installed on the system owned by the County.

The Village agrees to give the County the right to use the streets or other public easements for the installation and maintenance of said water system and the County shall restore said street in a manner as outlined hereinafter.

SECTION 2.  Obligations of the County.  The County agrees to take over operation and maintenance of the existing water system and make the necessary improvements to the water system as may be required by the Illinois E.P.A.

-2-

The County agrees to take the necessary steps to integrate the two existing systems of Hawthorn Woods and Glenshire into one water utility system.

The County further agrees to pay the Village the necessary funds to retire the remaining outstanding debt in accordance with Exhibit "B".

SECTION 3.  Charges and Billing.  For the cost of operating, maintaining, payment to the Village for retirement of debt and improvements, the County shall bill the individual customers on a quarterly basis as per Exhibit "C". These rates and charges are subject to changes as may be necessary or feasible by rising or lowered cost of operation and construction.

If any charge or partial thereof due to the County by any customer, whether residential, commercial, industrial or institutional, shall remain unpaid for fifteen (15) days following its quarterly due date, said customer shall be charged with, and pay to the County, a penalty charge of 10% of said unpaid quarterly balance, and the County may upon failure by said customer to pay such amount enforce payment by any remedy available at law or equity, including the termination of service, but in all instances the responsibility of the bill is with the property owner.

SECTION 4.  Connection Charges to the Water System.  Shall be as follows:

| | |
|---|---|
| 3/4" Service Line | $200 + cost 5/8" meter |
| 1" Service Line | $225 + cost 3/4" meter |
| 1-1/4" Service Line | $235 + cost 1" meter |
| 1-1/2" Service Line | $250 + cost 1-1/2" meter |
| 2" Service Line | $300 + cost 2" compound meter |
| 4" Service Line | $400 + cost 4" compound meter |
| 6" Service Line or larger | $500 + meter |

-3-

These connection charges are over and above the cost or charges for the installation of water mains and shall be paid to the county before any connection can be made to the system. Any customers that are presently connected to the system are not required to pay said connection charges.

SECTION 5.  Records.  Permanent books and records shall be kept by the County of rates established, accounts receivable and the volumes of water supplied by the County system, in addition to complete books of accounts showing all costs incurred in connection with the County system.  Such records shall be maintained beginning with the commencement of operation of any part of the County system.

SECTION 6.  Expansion and Improvement of the County Water System.  The County shall expand and improve these facilities when the need arises for expansion of the Lake County Water System within the Village of Hawthorn Woods.  The County will from time to time issue revenue bonds to expand and improve the water supply facilities.  Said revenue bonds shall be retired by funds derived from the System.

SECTION 7.  Regulatory Bodies.  This Agreement shall be subject to all valid rules, regulations, and laws applicable hereto, passed or promulgated by the United States of America, the State of Illinois, or any governmental body or agency having lawful jurisdiction or any authorized representative or agency of any of them.

SECTION 8.  Contracts with Others.  The County reserves the right to contract persons, natural or corporate, private or public, to perform services similar to those to be performed under this Agreement or other services; provided, however, that the County will do nothing under any such contract which will impair the rights or infringe on the County's ability to serve the Village.

-4-

SECTION 9. Assignment. Neither of the parties hereto shall have the right to terminate its obligations hereunder by dissolution or otherwise without first securing the written consent of the other party and this Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

SECTION 10. Effective Date and Term of Contract. This Agreement shall be in full force and effect and binding upon the parties hereto upon the execution of the Agreement.

SECTION 11. Notice. Whenever in this Agreement notice is required to be given, the same shall be given by Certified Mail addressed to the respective parties at the following address:

Village of Hawthorn Woods          County of Lake
Village Hall                       Department of Public Works
RR. #1, Box 372                    County Building
Lake Zurich, Illinois 60047        Waukegan, Illinois 60085
Attn: Village Clerk

unless a different address shall be hereafter designated in writing by either of the parties.

The date of giving such notice shall be deemed to be the date of mailing thereof. Billings for and payments of water service and operation may be made by regular mail.

SECTION 12. Execution of Documents. This Agreement shall be executed in ten counterparts, any of which shall be regarded for all purposes as one original. Each party agrees that it will execute any and all deeds, instruments, documents and resolutions or ordinances necessary to give effect to the terms of this Agreement.

SECTION 13. Waiver. No waiver by either party or any term or condition of this Agreement shall be deemed or construed as a waiver of any other term or condition, nor shall a waiver of any breach be deemed to constitute a waiver of any subsequent breach whether of the same or a different provision of the Agreement.

-5-

SECTION 14. Remedies. In addition to the remedies provided by law, this Agreement shall be specifically enforceable by either party.

SECTION 15. Entirety. This Agreement merges and supersedes all prior negotiations, representations and agreements between the parties hereto relating to the subject matter hereof and constitutes the entire contract between the parties concerning the disposal of water by the Village and acceptance of such water service by the County.

IN WITNESS WHEREOF, The parties have executed this Agreement as of this day and year first above written.

VILLAGE OF HAWTHORN WOODS       COUNTY OF LAKE, ILLINOIS

BY _____     BY _____
President                   Chairman, Lake County Board

ATTEST:                        ATTEST:

_____        _____
Clerk                          County Clerk

-6-

EXHIBIT "A"

LIST OF FACILITIES:

1. Well #1 - 240' deep and 6" dia. (Drilled March 1954)

2. 1 1/2 H.P. submersible Red Jacket pump  (Installed March 1954)

3. 2 each - 500 gal. storage tank

4. Well #2 - 230' deep and 6" dia.  (Drilled Nov. 1955)

5. 1 1/2 H.P. submersible Jacuzzi pump, 306 GPM  (Installed Nov. 1972)

6. Well #3 - 203' deep and 5" dia.  (Drilled Dec. 1956)

7. 1 1/2 H.P. submersible Red Jacket pump, 20 GPM (Installed Sept. 1966)

8. 120 gal. storage tank

9. Well #4 - 245' deep and 6" dia.  (Drilled Sept. 1957)

10. 1 1/2 H.P. submersible Red Jacket pump, 20 GPM (Exchanged for rebuilt unit Sept. 1965)

11. 3 each - 560 gal. storage tank

12. Well #5 - 280' deep and 6" dia.  (Drilled June 1957)

13. 1 1/2 H.P. submersible Red Jacket pump, 13 GPM.  Pitless Adapter. (Installed Sept. 1974)

14. Well #6 - 285' deep and 6" dia.  (Drilled May 1958)

15. 1 1/2 H.P. submersible Red Jacket pump, 15 GPM  (Installed July 1974)

16. Well #7 - 240' deep and 6" dia.  (Drilled Nov. 1958)

17. 1 H.P. submersible Red Jacket pump  (Installed Oct. 1964)

18. 2 each - 1000 gal. storage tank

19. Well #8 - Drilled 15 years ago.

20. 1 - 1 1/2 Clayton Mark submersible pump  (Installed 15 years ago)

21. 500 gal. storage tank

22. Well # 9 - 272' deep and 6" dia.  (Drilled March 1960)

23. 1 1/2 H.P. Red Jacket submersible pump, 25 GPM

24. Well #10 - 230' deep and 6" dia.  (Drilled Oct. 1960)

25. Well #11 - 227 ft. deep and 5" dia. (Drilled May 1961)

26. 1 - 1 HP Red Jacket Pump

27. Well #12 - 238 ft. deep and 5" dia. (Drilled July 1962)

28. 1 - 1½ HP Red Jacket Pump

EXHIBIT " B "

DEBT RETIREMENT PLAN

VILLAGE OF HAWTHORN WOODS

WATER SYSTEM

November 1, 1975

Interest 5 3/4 %

Balance
$14,233.67

Yearly Payment $3,466.68

| Payment Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| **1976** | | | | 14,233.67 |
| Feb 1 | 866.67 | 204.61 | 662.06 | 13,571.61 |
| May 1 | 866.67 | 195.09 | 671.58 | 12,900.03 |
| Aug 1 | 866.67 | 185.43 | 681.24 | 12,218.79 |
| Nov 1 | 866.67 | 175.64 | 691.03 | 11,527.76 |
| **1977** | | | | |
| Feb 1 | 866.67 | 165.71 | 700.96 | 10,826.08 |
| May 1 | 866.67 | 155.63 | 711.04 | 10,115.76 |
| Aug 1 | 866.67 | 145.41 | 721.26 | 9,394.05 |
| Nov 1 | 866.67 | 135.04 | 731.63 | 8,662.87 |
| **1978** | | | | |
| Feb 1 | 866.67 | 124.52 | 742.15 | 7,920.72 |
| May 1 | 866.67 | 113.86 | 752.81 | 7,167.91 |
| Aug 1 | 866.67 | 103.03 | 763.64 | 6,404.27 |
| Nov 1 | 866.67 | 92.06 | 774.61 | 5,629.66 |
| **1979** | | | | |
| Feb 1 | 866.67 | 80.92 | 785.75 | 4,843.91 |
| May 1 | 866.67 | 69.63 | 797.04 | 4,046.87 |
| Aug 1 | 866.67 | 58.17 | 808.05 | 3,238.37 |
| Nov 1 | 866.67 | 46.55 | 820.12 | 2,418.25 |
| **1980** | | | | |
| Feb 1 | 866.67 | 34.76 | 831.91 | 1,586.34 |
| May 1 | 866.67 | 22.80 | 843.87 | 742.47 |
| Aug 1 | 753.14 | 10.67 | 742.47 | 0 |

EXHIBIT "C"

VILLAGE OF HAWTHORN WOODS

WATER SYSTEM

Water Rates

WATER SERVICE CHARGES:

A.  RESIDENTIAL

Minimum quarterly bill - $15.75 to include 9,000 gallons of water

Next 7,000 gallons/per quarter          $1.10 per 1,000 gallons

Over 16,000 gallons/per quarter         $1.00 per 1,000 gallons

NOTE:    A 10% service charge will be added to any bills more than 15 days
in arrears.

CUSTOMER DEPOSIT:

A cash deposit in the amount of Twenty-Five ($25.00) dollars will
be required of any residential applicant for water service to secure
the performance by the applicant of the terms and conditions of the
Department under which water service is supplied.

EFFECTIVE DATE:

These rates will be effective April 1, 1975.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER DONOVAN, AMANDA )
DONOVAN, ROBERT COOPER, AND )
MARY COOPER, Individually and on )
Behalf of All Persons Similarly Situated, )
                    )
         Plaintiffs, )    Case No. 08 C 3098
                    )
   v.                   )    Judge Joan Humphrey Lefkow
                    )
COUNTY OF LAKE, a Body Politic and )
Corporate of the State of Illinois, )
                    )
         Defendant. )

## DECLARATION OF CHRISTOPHER DONOVAN

      I, Christopher Donovan, having been duly sworn, on oath, depose and state that if called as a witness in the referenced matter, I would competently testify as follows:

1. I am over twenty-one years of age and reside, with my wife Amanda, at 9 Croydon Road, Hawthorn Woods, Illinois.

2. Our home is within the Glennshire subdivision of Hawthorn Woods, Illinois.

3. The home at 101 Old McHenry Road, Hawthorn Woods, Illinois is also within the Glennshire subdivision

4. The water system owned and operated by Lake County is the source of potable water for our home, and the remaining homes in the Glennshire subdivision.

      I swear under penalty of perjury that this information is true and correct and based on my personal knowledge.

Executed on August 21, 2008                                            

                                              Christopher Donovan

EXHIBIT

2

STATE OF ILLINOIS )
                  ) SS
COUNTY OF LAKE )

COUNTY BOARD, LAKE COUNTY, ILLINOIS

ADJOURNED ANNUAL SEPTEMBER, 1975 SESSION

OCTOBER 14, A.D., 1975
21

MR. CHAIRMAN AND MEMBERS OF THE COUNTY BOARD:

Your Public Service Committee presents herewith a Resolution,

providing for the execution of an agreement between the Village of Hawthorn Woods

and Lake County for the acquisition of their water system; and requests its adoption.

Respectfully submitted,

_____
CHAIRMAN

_____
VICE-CHAIRMAN

_____

_____

_____

_____

PUBLIC SERVICE COMMITTEE

Certified to be a true copy of
Records of the Lake County
Board Meeting of

OCT 21 1975    APPROVED

Certifi
of Lak

#2

EXHIBIT

3

RESOLUTION

WHEREAS, the Board of Supervisors of Lake County, Illinois, had established the Lake County Public Works Department to facilitate and coordinate the overall growth and development of Lake County; particularly with pollution control, abatement and supply of water; and

WHEREAS, the County of Lake is authorized under the provisions of the Public Works Act as adopted July 22, 1959, and as amended, to construct, maintain and operate pollution control devices as well as water supply facilities; and

WHEREAS, the public health, welfare and safety of the residents of Lake County requires the development of a regional water supply system; and

WHEREAS, the Public Works Department has the ability and personnel to maintain and operate the Hawthorn Woods water system for the Village of Hawthorn Woods; and

WHEREAS, the Village of Hawthorn Woods has expressed a desire for the Lake County Public Works Department to take over the operation of the system; and

WHEREAS, the Village of Hawthorn Woods is willing to upgrade the system to meet the Lake County Public Works Department's standards; and

WHEREAS, the Village of Hawthorn Woods has passed a resolution and signed an agreement to this effect; and

WHEREAS, the Public Service Committee has reviewed this agreement, copy attached hereto and made a part hereof, and recommends that the County of Lake enter into an agreement with the Village of Hawthorn Woods to acquire the Hawthorn Woods water system.

NOW, THEREFORE, BE IT RESOLVED, by this County Board of Lake County, Illinois, that the Chairman of the Board and the Clerk of said County, be and they are hereby authorized and directed to execute the attached agreement between the Village of Hawthorn Woods and the County of Lake for the acquisition of the Hawthorn Woods water system.

DATED, at WAUKEGAN, LAKE COUNTY, ILLINOIS, on this 14th day of October, A.D., 1975.

#2

## AGREEMENT FOR WATER SUPPLY AND OPERATION

THIS AGREEMENT, made and executed this 21st day of
October , 19 75 , between VILLAGE OF HAWTHORN
WOODS, ILLINOIS, a municipal corporation of the State of Illinois,
hereinafter referred to as the "Village", and the COUNTY OF LAKE,
ILLINOIS, hereinafter referred to as "County".

WITNESSETH:

WHEREAS, the public health, welfare and safety of the residents
of the Village and the residents of the County require the develop-
ment of coordinated and adequate systems of water supply and opera-
tion; and

WHEREAS, County has established a Department of Public Works
pursuant to an Act of the General Assembly of the State of Illinois
entitled, "An Act in Relation to Water Supply, Drainage, Sewage,
Pollution and Flood Control in Certain Counties", approved July
22, 1959, and as amended August 1, 1961, for the purpose of per-
forming public works functions of water supply and operation; and

WHEREAS, the Village owns and operates a water system within
its Village limits; and

WHEREAS, the Village has an outstanding mortgage of $15,549.36
on the water system; and

WHEREAS, the County has the ability to operate and maintain
a water and sewer system; and

WHEREAS, the County owns and operates an existing water system
with the Village of Hawthorn Woods; and

WHEREAS, the County has a plan to integrate the Village's
water system into the County's water system; and

WHEREAS, to carry out the proposed plan of the County and
perform its authorized function and to provide for the water supply
from the Customers into the County System, it is necessary that an

-1-

Agreement be now entered into establishing certain rights and duties of the parties incident thereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein it is hereby agreed as follows:

SECTION 1.  Delivery and Acceptance of System.  From and after April 1, 1975, the Village agrees to transfer ownership of the existing water system as shown in Exhibit "A" to the County.  The Village, also agrees to pass an ordinance requiring all persons, firms, and corporations to connect to the system in the future if the water system is within two hundred (200) feet of their building, excepting existing private wells and other water systems.

The Village herein also agrees that all future water customers within its boundaries shall be serviced in like manner and bound by the County rules and regulations, except as to present water systems not purchased by the County of Lake.

The Village further agrees that it will refrain from operating or installing any water system in competition with County local facilities within the Village.

The County shall supply free water service to the Village Hall for use as a governmental body.  This is not intended to be free water service to apartments adjoining the Village Hall.  The County of Lake shall also furnish free water should any fire hydrants be installed on the system owned by the County.

The Village agrees to give the County the right to use the streets or other public easements for the installation and maintenance of said water system and the County shall restore said street in a manner as outlined hereinafter.

SECTION 2.  Obligations of the County.  The County agrees to take over operation and maintenance of the existing water system and make the necessary improvements to the water system as may be required by the Illinois E.P.A.

-2-

The County agrees to take the necessary steps to integrate the two existing systems of Hawthorn Woods and Glenshire into one water utility system.

The County further agrees to pay the Village the necessary funds to retire the remaining outstanding debt in accordance with Exhibit "B".

SECTION 3. Charges and Billing. For the cost of operating, maintaining, payment to the Village for retirement of debt and improvements, the County shall bill the individual customers on a quarterly basis as per Exhibit "C". These rates and charges are subject to changes as may be necessary or feasible by rising or lowered cost of operation and construction.

If any charge or partial thereof due to the County by any customer, whether residential, commercial, industrial or institutional, shall remain unpaid for fifteen (15) days following its quarterly due date, said customer shall be charged with, and pay to the County, a penalty charge of 10% of said unpaid quarterly balance, and the County may upon failure by said customer to pay such amount enforce payment by any remedy available at law or equity, including the termination of service, but in all instances the responsibility of the bill is with the property owner.

SECTION 4. Connection Charges to the Water System. Shall be as follows:

| | |
|---|---|
| 3/4" Service Line | $200 + cost 5/8" meter |
| 1" Service Line | $225 + cost 3/4" meter |
| 1-1/4" Service Line | $235 + cost 1" meter |
| 1-1/2" Service Line | $250 + cost 1-1/2" meter |
| 2" Service Line | $300 + cost 2" compound meter |
| 4" Service Line | $400 + cost 4" compound meter |
| 6" Service Line or larger | $500 + meter |

-3-

These connection charges are over and above the cost or charges for the installation of water mains and shall be paid to the county before any connection can be made to the system. Any customers that are presently connected to the system are not required to pay said connection charges.

SECTION 5. Records. Permanent books and records shall be kept by the County of rates established, accounts receivable and the volumes of water supplied by the County system, in addition to complete books of accounts showing all costs incurred in connection with the County system. Such records shall be maintained beginning with the commencement of operation of any part of the County system.

SECTION 6. Expansion and Improvement of the County Water System. The County shall expand and improve these facilities when the need arises for expansion of the Lake County Water System within the Village of Hawthorn Woods. The County will from time to time issue revenue bonds to expand and improve the water supply facilities. Said revenue bonds shall be retired by funds derived from the system.

SECTION 7. Regulatory Bodies. This Agreement shall be subject to all valid rules, regulations, and laws applicable hereto. passed or promulgated by the United States of America, the State of Illinois, or any governmental body or agency having lawful jurisdiction or any authorized representative or agency of any of them.

SECTION 8. Contracts with Others. The County reserves the right to contract persons, natural or corporate, private or public, to perform services similar to those to be performed under this Agreement or other services; provided, however, that the County will do nothing under any such contract which will impair the rights or infringe on the County's ability to serve the Village.

-7-

SECTION 9.  Assignment.  Neither of the parties hereto shall have the right to terminate its obligations hereunder by dissolution or otherwise without first securing the written consent of the other party and this Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

SECTION 10.  Effective Date and Term of Contract.  This Agreement shall be in full force and effect and binding upon the parties hereto upon the execution of the Agreement.

SECTION 11.  Notice.  Whenever in this Agreement notice is required to be given, the same shall be given by Certified Mail addressed to the respective parties at the following address:

Village of Hawthorn Woods
Village Hall
RR. #1, Box 372
Lake Zurich, Illinois 60047
Attn: Village Clerk

County of Lake
Department of Public Works
County Building
Waukegan, Illinois 60085

unless a different address shall be hereafter designated in writing by either of the parties.

The date of giving such notice shall be deemed to be the date of mailing thereof.  Billings for and payments of water service and operation may be made by regular mail.

SECTION 12.  Execution of Documents.  This Agreement shall be executed in ten counterparts, any of which shall be regarded for all purposes as one original.  Each party agrees that it will execute any and all deeds, instruments, documents and resolutions or ordinances necessary to give effect to the terms of this Agreement.

SECTION 13.  Waiver.  No waiver by either party or any term or condition of this Agreement shall be deemed or construed as a waiver of any other term or condition, nor shall a waiver of any breach be deemed to constitute a waiver of any subsequent breach whether of the same or a different provision of the Agreement.

-5-

SECTION 14. <u>Remedies</u>. In addition to the remedies provided by law, this Agreement shall be specifically enforceable by either party.

SECTION 15. <u>Entirety</u>. This Agreement merges and supersedes all prior negotiations, representations and agreements between the parties hereto relating to the subject matter hereof and constitutes the entire contract between the parties concerning the disposal of water by the Village and acceptance of such water service by the County.

IN WITNESS WHEREOF, The parties have executed this Agreement as of this day and year first above written.

VILLAGE OF HAWTHORN WOODS                    COUNTY OF LAKE, ILLINOIS

BY _____                BY _____
      President                                Chairman, Lake County Board

ATTEST:                                      ATTEST:

_____                   _____
      Clerk                                      County Clerk

-6-

EXHIBIT "A"

LIST OF FACILITIES:

1. Well #1 - 240' deep and 6" dia. (Drilled March 1954)

2. 1 1/2 H.P. submersible Red Jacket pump (Installed March 1954)

3. 2 each - 500 gal. storage tank

4. Well #2 - 230' deep and 6" dia. (Drilled Nov. 1955)

5. 1 1/2 H.P. submersible Jacuzzi pump, 306 GPM (Installed Nov. 1972)

6. Well #3 - 203' deep and 5" dia. (Drilled Dec. 1956)

7. 1 1/2 H.P. submersible Red Jacket pump, 20 GPM (Installed Sept. 1966)

8. 120 gal. storage tank

9. Well #4 - 245' deep and 6" dia. (Drilled Sept. 1957)

10. 1 1/2 H.P. submersible Red Jacket pump, 20 GPM (Exchanged for rebuilt unit Sept. 1965)

11. 3 each - 560 gal. storage tank

12. Well #5 - 280' deep and 6" dia. (Drilled June 1957)

13. 1 1/2 H.P. submersible Red Jacket pump, 13 GPM. Pitless Adapter. (Installed Sept. 1974)

14. Well #6 - 285' deep and 6" dia. (Drilled May 1958)

15. 1 1/2 H.P. submersible Red Jacket pump, 15 GPM (Installed July 1974)

16. Well #7 - 240' deep and 6" dia. (Drilled Nov. 1958)

17. 1 H.P. submersible Red Jacket pump (Installed Oct. 1964)

18. 2 each - 1000 gal. storage tank

19. Well #8 - Drilled 15 years ago.

20. 1 - 1 1/2 Clayton Mark submersible pump (Installed 15 years ago)

21. 500 gal. storage tank

22. Well # 9 - 272' deep and 6" dia. (Drilled March 1960)

23. 1 1/2 H.P. Red Jacket submersible pump, 25 GPM

24. Well #10 - 230' deep and 6" dia. (Drilled Oct. 1960)

25. Well #11 - 227 ft. deep and 5" dia. (Drilled May 1961)

26. 1 - 1 HP Red Jacket Pump

27. Well #12 - 238 ft. deep and 5" dia. (Drilled July 1962)

28. 1 - 1½ HP Red Jacket Pump

EXHIBIT " B "

DEBT RETIREMENT PLAN

VILLAGE OF HAWTHORN WOODS

WATER SYSTEM

November 1, 1975

Interest 5 3/4 %

Balance
$14,233.67

Yearly Payment $3,466.68

| Payment Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| 1976 | | | | |
| Feb 1 | 866.67 | 204.61 | 662.06 | 14,233.67 |
| May 1 | 866.67 | 195.09 | 671.58 | 13,571.61 |
| Aug 1 | 866.67 | 185.43 | 681.24 | 12,900.03 |
| Nov 1 | 866.67 | 175.64 | 691.03 | 12,218.79 |
| | | | | 11,527.76 |
| 1977 | | | | |
| Feb 1 | 866.67 | 165.71 | 700.96 | 10,826.08 |
| May 1 | 866.67 | 155.63 | 711.04 | 10,115.76 |
| Aug 1 | 866.67 | 145.41 | 721.26 | 9,394.05 |
| Nov 1 | 866.67 | 135.04 | 731.63 | 8,662.87 |
| 1978 | | | | |
| Feb 1 | 866.67 | 124.52 | 742.15 | 7,920.72 |
| May 1 | 866.67 | 113.86 | 752.81 | 7,167.91 |
| Aug 1 | 866.67 | 103.03 | 763.64 | 6,404.27 |
| Nov 1 | 866.67 | 92.06 | 774.61 | 5,629.66 |
| 1979 | | | | |
| Feb 1 | 866.67 | 80.92 | 785.75 | 4,843.91 |
| May 1 | 866.67 | 69.63 | 797.04 | 4,046.87 |
| Aug 1 | 866.67 | 58.17 | 808.05 | 3,238.37 |
| Nov 1 | 866.67 | 46.55 | 820.12 | 2,418.25 |
| 1980 | | | | |
| Feb 1 | 866.67 | 34.76 | 831.91 | 1,586.34 |
| May 1 | 866.67 | 22.80 | 843.87 | 742.47 |
| Aug 1 | 753.14 | 10.67 | 742.47 | 0 |

EXHIBIT "C"

VILLAGE OF HAWTHORN WOODS

WATER SYSTEM

Water Rates

WATER SERVICE CHARGES:

A.  RESIDENTIAL

Minimum quarterly bill - $15.75 to include 9,000 gallons of water

Next 7,000 gallons/per quarter          $1.10 per 1,000 gallons

Over 16,000 gallons/per quarter         $1.00 per 1,000 gallons

NOTE:    A 10% service charge will be added to any bills more than 15 days
in arrears.

CUSTOMER DEPOSIT:

A cash deposit in the amount of Twenty-Five ($25.00) dollars will

be required of any residential applicant for water service to secure

the performance by the applicant of the terms and conditions of the

Department under which water service is supplied.

EFFECTIVE DATE:

These rates will be effective April 1, 1975.

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,       )
*ex rel.* LISA MADIGAN, Attorney General   )
of the State of Illinois,                 )
                                          )
                        Plaintiff,        )
                                          )
        vs.                               )
                                          )    Gen. No. 06 CH 2569
CCOUNTY OF LAKE, a body politic and       )
corporate of the State of Illinois,       )
                                          )
                        Defendant.        )

F I L E D

JAN 2 9 2007

*Sally A. Coffelt*
CIRCUIT CLERK

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSE

NOW COMES Defendant, COUNTY OF LAKE, by Michael J. Waller, State's

Attorney of Lake County, through Special Assistant State's Attorney James C. Bakk and

Assistant State's Attorney Daniel L. Jasica, and in Answer to Plaintiff's complaint herein,

states as follows:

### COUNT I

1. Defendant admits the allegations of Paragraph 1.

2. Defendant admits the allegations of Paragraph 2.

3. Defendant denies any ongoing violations of the Act, and denies that any restraint

of violations is either necessary or required. Defendant admits that this cause is brought

under the statutory sections cited.

4. Defendant admits Paragraph 4.

5. Defendant admits that, through its Department of Public Works, it was and is the

owner and operator of the said Glennshire-Hawthorn Woods water system, pursuant to and

subject to an intergovernmental agreement between the County of Lake and the Village of

Hawthorn Woods, approved October 21, 1975.

1

EXHIBIT

4

6. Defendant admits that a portion of the said Glennshire-Hawthorn Woods water system is located in the Glenshire subdivision, and affirmative states that said Glennshire-Hawthorn Woods water system also includes other geographic areas lying with the municipal jurisdictional boundaries of the Village of Hawthorn Woods.

7. Defendant admits the allegations of Paragraph 7, except that Defendant states that thirteen of the wells have below ground well pits.

8. Defendant admits the allegations of Paragraph 8.

9. Defendant admits the allegations of Paragraph 9.

10. Defendant admits the allegations of Paragraph 10.

11. Defendant admits the allegations of Paragraph 11.

12. Defendant admits the allegation of Paragraph 12.

13. Defendant admits the allegations of Paragraph 13.

14. Defendant admits the allegations of Paragraph 14.

15. Defendant admits the allegations of Paragraph 15.

16. Defendant admits the allegations of Paragraph 16.

17. Defendant admits the allegations of Paragraph 17.

18. Defendant admits the allegations of Paragraph 18.

19. Defendant admits that in September 2000, July 2002, and August 2005 it collected and had analyzed water samples from the said water distribution system, and that there was one positive total coliform in each of those months. In further answer, Defendant affirmatively states that, for the line which tested positive for coliform, Defendant flushed the service line that tested positive for coliforms; took additional water samples both upstream and downstream from the initial positive sample to assure that no additional coliform counts

2

were present; retested the original positive location; and, only after confirmation that no

coliform was detected was system flushing suspended.

 20. Defendant admits the allegations in Paragraph 20.

 21. Defendant admits the allegations in Paragraph 21.

 22. Defendant admits the allegations of Paragraph 22.

 23. Defendant admits that on March 29, 2005 the Glennshire-Hawthorn Woods water

system did not have a minimum free chlorine residual of 0.2mg/l. In further answer,

Defendant states that subsequent to March 29, 2005, Defendant did promptly install interim

chlorination improvements to the water system, with permit(s) from the IEPA, to ensure the

safety of the water supply, and that the minimum free chlorine residual, set forth in Section

35 Ill.Admin.Code 653.604, has since been continuously maintained.

 24. Defendant denies the allegations of Paragraph 24.

 25. Defendant denies the allegations of Paragraph 25.

 26. Defendant denies the allegations of Paragraph 26.

 27. Defendant denies the allegations in Paragraph 27.

 WHEREFORE, Defendant COUNTY OF LAKE prays that this Honorable Court

enter an Order of judgment in favor of Defendant, denying any relief to Plaintiff under its

Complaint; or for such other or different relief as the Court deems just and equitable under

the circumstances.

<u>AFFIRMATIVE DEFENSE – Laches</u>

 1. At all times alleged in the Complaint, the monthly sampling for coliform

performed by Defendant's Public Works Department for the Glennshire-Hawthorn Woods

water system, has been delivered to the Lake County Health Department for testing. The

results of any such testing were and are, in all instances, delivered by the Health Department simultaneously to both the IEPA and the Lake County Public Works Department.

2. For any of the violations alleged in Plaintiff's Complaint, being in September 2000, July 2002, and August 2005, the first official notice of a violation, requiring remedial action other than standard maintenance or operational procedures, was received by Defendant COUNTY OF LAKE, or its Public Works Department, from the IEPA in calendar year 2005.

3. By reason of Plaintiff's delay in providing official notice of a violation requiring remedial measures, and in commencing this enforcement proceeding, Plaintiff's Complaint, as to the alleged violations in September 2000 and in July 2002, is barred by the judicial doctrine of *laches*.

WHEREFORE, Defendant COUNTY OF LAKE respectfully prays that this Honorable Court find that Plaintiff's Complaint, as to alleged violations in September 2000 and in July 2002, is barred by *laches*.

COUNTY OF LAKE, Illinois

MICHAEL J. WALLER
State's Attorney of Lake County

By: _____
James C. Bakk
Special Assistant State's Attorney

James C. Bakk (# 3121531)              Daniel L. Jasica
Special Assistant State's Attorney      Assistant State's Attorney
200 N. M.L.King Ave., Suite 206        18 N. County Street
Waukegan, IL 60085                      Waukegan, IL 60085
(847) 249-9900                          (847) 377-3101

4

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**
**CHANCERY DIVISION**

FILED

NOV 30 2006

CIRCUIT CLERK

No. 06 CH 2569

|  |  |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| COUNTY OF LAKE, a body politic and corporate of the State of Illinois, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR INJUNCTION AND CIVIL PENALTIES

Now comes plaintiff, PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA

MADIGAN, Attorney General of the State of Illinois, on her own motion, and at the

request of the Illinois Environmental Protection Agency, and complains of defendant,

COUNTY OF LAKE, as follows:

### COUNT I

## FAILURE TO PROVIDE ADEQUATE CHLORINATION

1.      This count is brought on behalf of the PEOPLE OF THE STATE OF

ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, on her

own motion and at the request of the Illinois Environmental Protection Agency ("Illinois

EPA"), pursuant to the terms and provisions of Section 42 of the Illinois Environmental

Protection Act ("Act"), 415 ILCS 5/42 (2004).

2.      The Illinois EPA is an administrative agency of the State of Illinois, created pursuant to Section 4 of the Act, 415 ILCS 5/4 (2004), and charged, *inter alia,* with the duty of enforcing the Act.

3.      This complaint is brought pursuant to Sections 42(d) and (e) of the Act, 415 ILCS 5/42(d) and (e) (2004), and is an action to restrain ongoing violations of the Act and for civil penalties.

4.      At all times relevant to this complaint, Defendant, County of Lake ("Lake County"), was and is an Illinois political subdivision duly organized and existing under the laws of the State of Illinois.

5.      At all times relevant to this complaint, Lake County, operating through the Lake County Department of Public Works ("Lake County DPW"), was and is the owner and operator of the Hawthorn Woods Glennshire Water System ("Hawthorn Woods PWS").

6.      The Hawthorn Woods PWS is located in the Glennshire subdivision in the Village of Hawthorn Woods, Lake County, Illinois.

7.      The Hawthorn Woods PWS has 224 direct service connections serving approximately 672 residents.  The Hawthorn Woods PWS consists of twenty shallow wells, thirteen of which are located below ground.  The Hawthorn Woods PWS has nine well subsystems that distribute the water from these twenty wells.  The water is stored in hydropneumatic tanks below ground.

8.      Defendant Lake County DPW's operation of its Hawthorn Woods PWS is subject to the Act and the rules and regulations promulgated by the Illinois Pollution Control Board ("Board") and the Illinois EPA.  The Board's regulations for public water

supplies are found in Title 35, Subtitle F, Chapter I of the Illinois Administrative Code

("Board Public Water Supply Regulations"), and the Illinois EPA rules and regulations

for public water supplies are found in Title 35, Subtitle F, Chapter II of the Illinois

Administrative Code ("Illinois EPA Public Water Supply Regulations").

9.   Section 18(a) of the Act, 415 ILCS 5/18(a) (2004), provides as follows:

(a)   No person shall:

(1)   Knowingly cause, threaten or allow the distribution of water from any public water supply of such quality or quantity as to be injurious to human health; or

(2)   Violate regulations or standards adopted by the Agency pursuant to Section 15(b) of this Act or by the Board under this Act…

10.   Section 601.101 of the Board Public Water Supply Regulations, 35 Ill. Adm. Code 601.101, provides as follows:

Owners and official custodians of a public water supply in the State of Illinois shall provide pursuant to the Environmental Protection Act [415 ILCS 5] (Act), the Pollution Control Board (Board) Rules, and the Safe Drinking Water Act (42 U.S.C. 300f et seq.) continuous operation and maintenance of public water supply facilities so that the water shall be assuredly safe in quality, clean, adequate in quantity, and of satisfactory mineral characteristics for ordinary domestic consumption.

11.   Sections 3.145, 3.315, and 3.365 of the Act, 415 ILCS 5/3.145, 5/3.315, and 5/3.365 (2004), respectively, provide the following definitions:

"COMMUNITY WATER SUPPLY" means a public water supply which serves or is intended to serve at least 15 service connections used by residents or regularly serves at least 25 residents.

"PERSON" is any individual, partnership, co-partnership, firm, company, limited liability company, corporation, association, joint stock company, trust, estate, political subdivision, state agency, or any other legal entity, or their

legal representative, agent or assigns.

"PUBLIC WATER SUPPLY" means all mains, pipes and structures through which water is obtained and distributed to the public, including wells and well structures, intakes and cribs, pumping stations, treatment plants, reservoirs, storage tanks and appurtenances, collectively or severally, actually used or intended for use for the purpose of furnishing water for drinking or general domestic use and which serve at least 15 service connections or which regularly serve at least 25 persons at least 60 days per year. A public water supply is either a "community water supply" or a "non-community water supply".

12.     Lake County, an Illinois political subdivision, is a "person" as that term is defined in Section 3.315 of the Act, 415 ILCS 5/3.315 (2004).

13.     The Hawthorn Woods PWS is both a "public water supply" ("PWS") and a "community water supply" as those terms are defined in Sections 3.365 and 3.145 of the Act, 415 ILCS 5/3.365 and 5/3.145 (2004), respectively, because Hawthorn Woods PWS regularly serves at least twenty-five residents sixty days per year.

14.     A water distribution system includes the pipes, storage tanks, and pumps that convey water from the water treatment location to the customers.

15.     Total coliform is a group of closely related bacteria that is an indicator of other, potentially harmful pathogens that can be present in water. Total coliform bacteria serve as an indicator of the efficiency of water treatment as well as the integrity of the pipes in the distribution system, and as a screen for the presence of fecal contamination.

16.     Section 611.325 of the Board Public Water Supply Regulations, 35 Ill. Adm. Code 611.325, defines the Maximum Contaminant Level ("MCL") for total coliform as follows:

(a)     The MCL is based on the presence or absence of total coliforms in a sample, rather than coliform density.

    (1)     For a supplier that collects at least 40 samples per month, if no more than 5.0 percent of the samples collected during a month are total coliform-positive, the supplier is in compliance with the MCL for total coliforms.

    (2)     For a supplier that collects fewer than 40 samples per month, if no more than one sample collected during a month is a total coliform-positive, the supplier is in compliance with the MCL for total coliforms.

17.     Section 611, Table A of the Board Public Water Supply Regulations, 35 Ill. Adm. Code 611, Table A, entitled *Total Coliform Monitoring Frequency for CWSs* provides, in pertinent part, as follows:

| Population Served | Minimum Number of Samples per Month |
|---|---|
| 25 to 1000 | 1 |

18.     Lake County, which serves at its Hawthorn Woods distribution system a population of approximately 672, must take at least one total coliform sample per month.

19.     In September 2000, July 2002, and August 2005, Lake County collected water samples from the Hawthorn Woods distribution system.  Analytical testing revealed that three samples in each month were positive for total coliform.

20.     Chlorine is a disinfectant chemical that destroys bacteria, including coliform, in water.

21.     On March 29, 2005, the Illinois EPA conducted an inspection of the Hawthorn Woods PWS.  On the date of the inspection, no chlorine was present in the water in the distribution system.

22.     Section 653.604 of the Illinois EPA Public Water Supply Regulations, 35

Ill. Adm. Code 653.604, provides as follows:

    (a)    A minimum free chlorine residual of 0.2 mg/l or a minimum combined residual of 0.5 mg/l shall be maintained in all active parts of the distribution system at all times.

    (b)    Chlorine residual test shall be made at frequent and regular intervals to determine the amount and type of residuals existing at different points in the distribution system.

23.    On March 29, 2005, and on another date or dates better known to Lake County, Lake County failed to maintain a minimum free chlorine residual of 0.2 mg/l in all parts of the distribution system at all times, in violation of Section 653.604 of the Illinois EPA Public Water Supply Regulations, 35 Ill. Adm. Code 653.604.

24.    By failing to provide chlorination disinfection at a minimum concentration of 0.2 mg/l in all parts of the Hawthorn Woods PWS distribution system at all times, and by allowing coliform to exist in the distribution system on at least three occasions between September 2000 and August 2005, Lake County failed to adequately assure the safety of Glennshire's drinking water.

25.    By its actions and omissions as alleged herein, Defendant, Lake County, violated Section 18(a)(1) of the Act, 415 ILCS 5/18(a)(1) (2004), and Section 601.101 of the Board Public Water Supply Regulations, 35 Ill. Adm. Code 601.101.

26.    By violating regulations adopted by the Illinois EPA or the Board pursuant to the Act, Lake County violated Section 18(a)(2) of the Act, 415 ILCS 5/18(a)(2) (2004).

27.    Plaintiff is without a remedy at law. Plaintiff will be irreparably injured and violations of the relevant environmental statutes and regulations will continue unless and until this Court grants equitable relief in the form of preliminary and, after trial,

permanent injunctive relief.

WHEREFORE, Plaintiff, PEOPLE OF THE STATE OF ILLINOIS, respectfully requests that this Court grant a preliminary injunction and after a trial, a permanent injunction, in favor of the Plaintiff and against Defendant, Lake County:

1.    Finding that Defendant violated Section 18(a) of the Act and Sections 601.101 and 653.604 of 35 Ill. Adm. Code;

2.    Enjoining Defendant from any future violations of Section 18(a) of the Act and Sections 601.101 and 653.604 of 35 Ill. Adm. Code;

3.    Ordering Defendant immediately to take all necessary corrective action that will result in a final and permanent abatement of violations of Section 18(a) of the Act and Sections 601.101 and 653.604 of 35 Ill. Adm. Code;

4.    Assessing against Defendant a civil penalty of Fifty Thousand Dollars ($50,000.00) for each violation of the Act and Ten Thousand Dollars ($10,000.00) for each day of violation;

5.    Assessing all costs in this action, including expert witness, consultant, and attorney's fees, against the Defendant; and

6.    Granting such other relief as this Court deems appropriate.

PEOPLE OF THE STATE OF ILLINOIS,
*ex rel.* LISA MADIGAN, Attorney General
of the State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division

By: ROSEMARIE CAZEAU, Chief
Environmental Bureau
Assistant Attorney General


*Of Counsel:*

KATHERINE M. HAUSRATH
Assistant Attorney General
Environmental Bureau
188 W. Randolph St., 20th Floor
Chicago, Illinois 60601
(312) 814-0660

 LakeCounty

Peter E. Kolb
Director

650 W. Winchester Road
Libertyville, Illinois 60048
Phone 847-377-7500
Fax 847-377-7173

May 12, 2008

Mr. Chris Donovan, President
Citizens For An Equitable Water Solution (CFEWS)
9 Croydon Road
Hawthorn Woods, IL 60047

Dear Mr. Donovan:

I received your letter dated April 24, 2008.  Since you have been directly involved as a resident representative since at least the September 19, 2006 public meeting, relating to the required replacement of the Hawthorn Woods-Glennshire (HWG) water system, your April 24, 2008 inquiry is surprising and disconcerting.

As everyone at the September 19, 2006 public meeting was advised, the HWG water system, permitted by the Village, was never constructed to public water system standards. Therefore, the 1975 contract, by which the County took over the water system from the Village, provided that any upgrades to the system shall be paid from local revenues of the HWG system.  As HWG residents will pay for the new Code-compliant public water system, CFEWS representatives, including yourself, were included as members of the Technical Committee formed in the Fall 2006, to research and select the available, most cost-efficient options, for replacement of the HWG water system.

All cost estimates, since the January 2007 Technical Committee report, have specified the individual HWG residence water bill surcharge amount, for each proposed HWG water system replacement option.

To your inquiry "will Lake County use Public Works funds to pay for the improvements to the (HWG) water system", the answer is "no", except as specified in the February 13, 2007 Lake County Board Resolution, by which the County Board committed to contribute $1 million towards the costs of the abandonment of the current water system and replacement of that system with a Code-compliant public water system, conditioned upon the Village first issuing all permits required to construct said new public water system.

So, in essence you have had the answer to your inquiry for over 1 ½ years, and at each of the 3 preference surveys of HWG residents conducted during calendar year 2007.

Sincerely,

LAKE COUNTY PUBLIC WORKS DEPARTMENT

Peter E. Kolb, P.E.
Director

C: James Bassett, Village Administrator, Hawthorn Woods
   Barry Burton, County Administrator
   James C. Bakk, Special Counsel

EXHIBIT

5

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA )
MADIGAN, Attorney General of the State of Illinois, )
                                                   )
                              Plaintiff,           )
        vs.                                        )
                                                   ) Gen. No. 06 CH 2569
COUNTY OF LAKE, a body politic and corporate of the )
State of Illinois,                                 )
                                                   )
                Defendant/Third-Party Plaintiff,   )
        vs.                                        )
                                                   )   06-18-08P12:11 FILE
VILLAGE OF HAWTHORN WOODS, an Illinois             )
municipal corporation,                             )
                                                   )
                Third-Party Defendant.             )

## COUNTY OF LAKE THIRD-PARTY COMPLAINT
## AGAINST VILLAGE OF HAWTHORN WOODS

NOW COMES Third-Party Plaintiff COUNTY OF LAKE, by State's Attorney

Michael J. Waller, through Special Assistant State's Attorney James C. Bakk and Assistant

State's Attorney Daniel L. Jasica, and complaining against Third-Party Defendant VILLAGE

OF HAWTHORN WOODS, states as follows:

1.  Third-Party Plaintiff COUNTY OF LAKE (hereinafter "County") is an Illinois

county, a body politic and corporate, organized and existing under the laws of the State of

Illinois.

2.  Third-Party Defendant VILLAGE OF HAWTHORN WOODS (hereinafter

"Village") is an Illinois municipal corporation, organized and existing under the laws of the

State of Illinois, and located in Lake County, Illinois.

3.  That on or about October 21, 1975, in Lake County, Illinois, the Village and the

County entered into a written agreement (hereinafter "1975 Contract"), by which the Village

1

**EXHIBIT**

**6**

transferred operation and ownership of a water supply system to the County, which water system is located entirely within the corporate limits of the Village, and serves residences lying within certain areas of the Village known as the Hawthorn Woods-Glennshire area ("HWG area"). A true and correct copy of that 1975 Contract, and the adopting County Board Resolution, is attached and marked Exhibit A and incorporated by reference.

**Background Facts**

4. The Hawthorn Woods-Glennshire water system ("HWG WS") was permitted by the Village, and constructed, from 1954 to 1962. The HWG WS serves 224 residences in the HWG area.

5. The HWG WS was not constructed to public water system standards. The HWG WS consisted of 20 individual wells, with water distribution piping measuring 1 ½ inches or 2 inches in diameter. Water storage was/is provided by hydroneumatic tanks, located in below ground pits. The wells, storage facilities, and distribution piping are located mainly on private property, in the backyards or frontyards of residences.

6. In 1975, according to the Village President, the Village sold the HWG WS to the County because the Village could not afford to operate a public water system in compliance with IEPA standards. (A true and correct copy of Village President R.L.W. Luedtke's March 28, 1980 letter, with HWG area resident survey results, is attached as Exhibit B and incorporated by reference.)

7. The 1975 Contract between the Village and the County provides that "(t)he County will from time to time issue revenue bonds to expand and improve the water supply facilities. Said revenue bonds shall be retired by funds derived from the local system." (Exhibit A, 1975 Contract, §6).

8. The 1975 Contract also provides that "(t)he Village agrees to give the County the right to use the streets or other public easements for the installation and maintenance of said water system ..." (Exhibit A, 1975 Contract §1).

9. In 1980, because the HWG WS was not in compliance with IEPA rules and regulations, representatives of the County met with the Village Board to explore the available funding alternatives under the 1975 Contract, to either rehabilitate or reconstruct the HWG WS. Following a survey of HWG area water system users, the Village Board determined that the Village would not become involved  A true and correct copy of the May 23, 1980 Galantha (County) to Lindstrom (IEPA) letter, with March 28, 1980 and May 10, 1980 Village letters is attached and marked Group Exhibit C and incorporated by reference.

10. As a result, with no local revenue funding source, the County was unable to and made no upgrades to the HWG WS. The County has continuously operated, maintained, and repaired the HWG WS, as needed, with in-kind replacement.

11. By a letter dated April 4, 2005, the IEPA provided to the County a Notice of HWG WS deficiencies, together with an IEPA engineering evaluation of the HWG WS. (A true and correct copy of that April 4, 2005 Notice and evaluation is attached and marked Exhibit D and incorporated by reference.) Included among the HWG WS deficiencies identified were below ground water storage facilities, inadequate water storage capacity, 1 inch and 2 inch diameter water distribution mains (4 inch diameter is current minimum), and failure to meet the fluoride and chlorine residuals in distributed water.

12. Thereafter, in 2005 and in 2006 the IEPA cited the HWG WS for violation of IEPA drinking water chlorination regulations, and served notices of violation on the County as operator and owner of the HWG WS. The IEPA also advised the County that no permits

3

would henceforth be issued for in-kind replacements (i.e. replacing a failed 2 inch water distribution main with a 2 inch water distribution main) to the HWG WS.

13. The County applied to the IEPA for a permit to install interim chlorination facilities on the HWG WS, which permit was issued by the IEPA. The County then installed the interim chlorination facilities on the HWG WS, and, as a result, the earlier chlorine residual violations of IEPA regulations have been (temporarily) remedied.

14. Following notice to the Village and HWG area residents, a public meeting was held in Hawthorn Woods on September 19, 2006 to advise and discuss the need (and IEPA demand) to replace the HWG WS, the options available for replacement of the 50+ years old HWG WS, and the costs involved regarding those replacement options. That September 19, 2006 public meeting was attended by a large number of HWG area residents, Village officials, County officials, and officials from Aqua Illinois, a public utility providing water service in other areas of the Village.

15. Following that September 19, 2006 public meeting, a Technical Advisory Committee (TAC) was formed to investigate and report back on the options available for replacement of the HWG WS and the costs involved for any identified option. Membership on that Technical Committee included HWG area resident representatives (who dubbed themselves CFEWS – Citizens For an Equitable Water System), County engineers and officials, an Aqua Illinois official, and the Village Administrator and Village engineer.

16. The Illinois Attorney General filed the subject <u>People ex rel. Madigan</u> v. <u>County of Lake,</u> 06 CH 2569, IEPA enforcement lawsuit on November 30, 2006.

17. In January 2007 the TAC issued a written report that advised of the options identified by the TAC as available to replace the HWG WS and the estimated costs (per residence) of each option. [The three identified options included:

(1) the HWG WS is abandoned, and each of the 224 residences drills their own private well;

(2) a County-owned and operated public WS option, with 4 inch water mains without fire-suppression ("County option"), financed by County issued revenue bonds secured by a surcharge to HWG area users bills; and (3) an Aqua Illinois operated, Village-owned, public WS option, with 8 inch water mains with fire-suppression (Aqua option), financed by a Village Special Service Area special assessment.

18. On February 13, 2007 the Lake County Board approved and passed a Resolution which committed a $1 million contribution toward the overall costs of abandonment of the old WS, designing, obtaining approvals for, constructing, and making operational, a new public WS for the HWG area, which Resolution was contingent on the Village first issuing all local permits and approvals required for the construction of either such public water system option.

19. In February 2007 an HWG area resident preference survey (Survey 1) was conducted. In the last week of February 2007, before the results of Survey 1 were tabulated, the Village Mayor advised that he had obtained certain recapture fee waivers which would lower the cost estimate of the Aqua option, and the Village Mayor asked that a second survey be conducted with inclusion of this new (recapture fee waiver) information in the Aqua option cost estimate.

20. The new information was distributed through the TAC to HWG area residents, and a second resident preference survey (Survey 2) was conducted in April 2007. The

5

results of that Survey 2 were that the overwhelming majority (79%) of HWG area residents who voted preferred the County option.

21. Shortly thereafter, on May 8, 2007 the Lake County Board approved and passed a Resolution which authorized proceeding under the HWG area resident-preferred County option, and authorized retention of a design engineering firm and directed proceeding with design of a new public WS and acquisition of real estate. A copy of this May 8, 2007 Resolution was mailed to the Village Board on May 10, 2007. A true and correct copy of the referenced May 10, 2007 letter and May 8, 2007 Resolution are attached and marked Exhibit E and incorporated by reference.

22. The County option required the acquisition of real estate to site a Well House and Water Reservoir structure, in or in close proximity to the HWG area. In June and July 2007, County representatives identified 3 different parcels in unincorporated Lake County, each of which was suitable, and proximate enough, to site a Well House and Water Reservoir for the HWG WS. The County made offers to purchase on each of those three unincorporated parcels, and each time the owner(s) refused. Thereafter, available parcels within the Village, in the HWG area, were reviewed and on August 13, 2007 a Contract to Purchase the parcel commonly known as 107 Old McHenry Road, Hawthorn Woods, lying within the HWG area, was entered into by the County.

23. On September 20, 2007, with preliminary engineering design of the new public WS complete, the County applied to the Village for a Special Use Permit and yard setback variations, to site the Well House and Water Reservoir at 107 Old McHenry Road. The County's Application was scheduled for a November 7, 2007 public hearing.

6

24. On October 5, 2007 the Village removed the County Application from the November 7, 2007 public hearing schedule. By a letter dated October 9, 2007 to the Village Clerk, one of the County's attorneys requested that the County's Application be returned to the November 7, 2007 public hearing schedule and explained the reasons for the request. (A true and correct copy of that October 9, 2007 County attorney letter is attached and marked Exhibit F and incorporated by reference.) On October 9, 2007, that same day, the Village refused to return the County Application for Special Use Permit to the November 7, 2007 public hearing schedule. (A true and correct copy of the October 9, 2007 Village Mayor refusal Email is attached and marked Exhibit G and incorporated by reference.) In addition, on October 9, 2007 the Village engineer advised the County's engineer that the County's Application for Special Use Permit would not be considered complete until an IEPA issued permit for the project was submitted with the Application.

25. On October 31, 2007 the County, by a letter signed by the County Board Chair and the County's Public Works & Transportation Committee Chair, sent to the Village Mayor and Village Trustees a request that the Village, at its November 26, 2007 Village Board meeting make an official determination as to which public WS replacement option would be supported by, and acted upon favorably by, the Village. (A true and correct copy of the County October 31, 2007 letter to the Village is attached and marked Exhibit H and incorporated by reference.) The Village Board failed or refused to act on that request, and continues to fail or refuse to act.

26. On November 16, 2007, at a meeting requested by the Attorney General's office, the Village Mayor advised the Attorney General's office and County counsel that cost savings in the HWG WS project could be realized by buying water in bulk from Aqua

7

Illinois, as compared with the County building a Well House and Water Reservoir on 107 Old McHenry Road. The Village Mayor insisted that a third HWG area resident preference survey be conducted. The Village Mayor represented to the Attorney General's office that the results of a third survey would be accepted by the Village. The Village Mayor also insisted that the County Board also act again to advise the Village and HWG area residents that the February 13, 2007 resolution authorizing a contribution of $1 million towards the abandonment of the old WS and construction of a new public WS was still in effect even if, either a County hybrid option (with a County operated and owned (4 inch water main) system with water purchased in bulk from Aqua Illinois), or a Village hybrid option (with a Village operated and owned (8 inch water main) system with water purchased in bulk from Aqua Illinois, was preferred by the HWG area residents.

27. On December 5, 2007 the Public Works & Transportation (PW&Tr.) Committee of the Lake County Board approved and passed a Resolution (a true and correct copy of which Resolution is attached and marked Exhibit I and incorporated by reference), which reaffirmed the County's $1 million contribution if either the County-Aqua hybrid option or the Village-Aqua hybrid option was preferred by HWG area residents. That PW&Tr. Committee Resolution also again asked the Village Board to advise which public WS option was acceptable to, and would be promptly approved by, the Village. The Village Board failed or refused, and continues to fail or refuse, to respond to the PW&Tr. Committee inquiry regarding which public WS option is acceptable to the Village.

28. Thereafter, on December 10, 2007 a public meeting for HWG area residents was hosted by the Village and the County to advise residents of the new public WS replacement

options; the estimated costs for each option; and, that a third survey (Survey 3) would be conducted.

29. In late December 2007 and early January 2008, Survey 3 of HWG area residents was conducted. (A true and correct copy of one of the Survey 3 ballots is attached and marked Exhibit J and incorporated by reference.) The results of that Survey 3 were again an overwhelming (85%) preference for the County-Aqua hybrid option.

30. By a letter dated January 10, 2008, the County's Public Works Director advised the Village Mayor and Village Trustees of the results of Survey 3, and he also requested that an authorized representative of the Village acknowledge that the County-Aqua hybrid option was acceptable to the Village, by signing at the bottom of his January 10, 2008 letter and returning that signed letter to him by January 31, 2008. (A true and correct copy of that January 10, 2008 letter is attached and marked Exhibit K and incorporated by reference.) The Village failed or refused to sign the acknowledgment, and continues to fail or refuse to acknowledge that the County-Aqua hybrid option is acceptable to the Village.

31. Pursuant to the direction in the County Board's December 13, 2007 Resolution, the County engineers proceeded to revise preliminary design drawings for the HWG WS to reflect the HWG area resident preferred (in Survey 3) County-Aqua hybrid option. And, on February 4, 2008 the County submitted a letter to the Village, withdrawing the September 20, 2007 Application for Special Use Permit, and submitting in its place an Application for Permit, with 6 sets of plans, to locate the water distribution system in public rights-of-way. (A true and correct copy of the February 4, 2008 cover letter is attached and marked Exhibit L and incorporated by reference.) The Village has failed or refused to act on that February 4,

2008 County Application for Permit, and continues to fail or refuse to act on said

Application.

    32.  On February 25, 2008, at a meeting requested by the Village Mayor with the

Village engineer, and with the County's Public Works Director Peter Kolb, on a draft

County-Hawthorn Woods Wholesale Sewage Treatment and Disposal Agreement ("Sewage

Contract"), for treatment of Village sanitary sewage at the County's Des Plaines WWTP,

which draft Sewage Contract Mr. Kolb had given to the Mayor and Village back on March

20, 2007, the Village Mayor advised Mr. Kolb that no Village permits would be issued for

the HWG WS project, unless Mr. Kolb first signed off on a Village sanitary sewer interceptor

construction project tributary to the County's WWTP, even though the Village Board had

failed or refused to act on the Sewer Contract.[1]

    33.  On February 29, 2008 the Village engineer sent comments on the County's

February 4, 2008 Application for Permit to the County, which advised for the first time that

there was a Village Fire Ordinance that required water main size to be a minimum 8 inches

diameter, and that the County would therefore need to apply to the Village Board for a

variance from that ordinance.

    34.  On April 10, 2008 the County applied to the Village for a variance from the 8

inches minimum diameter size Village ordinance requirement, to allow installation of the

HWG area resident preferred County-Aqua hybrid option 4 inches diameter water mains.  (A

true and correct copy of that April 10, 2008 letter is attached and marked Exhibit M and

incorporated by reference.)  The Village has failed or refused to act on that variance

---

[1] The next day, on February 26, 2008, the Village emailed to Mr. Kolb comments and suggested revisions to the Sewer Contract made by the Village attorney on October 11, 2007 and by the Village engineer on October 12, 2007.

application, or failed to schedule the variance for a public hearing, if required, and the Village continues to fail or refuse to act on the County's variance application.

35. As a result of the Village insistence that water be purchased from Aqua Illinois under the County-Aqua hybrid option, which leaves the HWG WS without any storage facilities, and because Aqua requests that any water purchaser enforce a water restriction ordinance, and because the Village insists on imposing an additional expense of a $2,000 per residence Village public water system connection fee as a part of the project cost, a three-party bulk water purchase agreement between Aqua, the County, and the Village was required, and is also required as a part of the IEPA permitting (identification of approved water supplier) of the HWG WS project. On April 25, 2008 the County provided Aqua and the Village with a revised three-party Bulk Water Agreement, requesting review and comments from the Village and Aqua. Aqua has responded with comments and some revisions, which were forwarded to the Village. The Village has failed or refused to provide any response or to act on the required Bulk Water Agreement, and continues to fail or refuse to respond or to act.

36. On May 29, 2008 certain HWG area residents filed a lawsuit against the County in federal court, purportedly as a class action, entitled, Donovan, et al. v. County of Lake, 08 CV 3098, which seeks *inter alia* a judicial order that the County, and not HWG area residents, pay for the HWG area new public WS, and also that the County pay the legal costs for the residents' attorneys to sue the County.

**COUNT I**
**Specific Performance or No Village Permit Required**

37-72.  Third-Party Plaintiff County adopts as if fully set forth herein Paragraphs 1-36 above as Paragraphs 37 – 72 of this Count I.

73.  In 1975, when the County took over operation and ownership of the HWG WS from the Village, the HWG WS did not meet public water system standards.

74.  The 1975 Contract provides that the County agreed "to make the necessary improvements to the water system as may be required by the Illinois E.P.A." (Exhibit A, 1975 Contract §2).

75.  The 1975 Contract also provides that "(t)he Village agrees to give the County the right to use the streets and public easements for the installation and maintenance of said water system …" (Exhibit A, 1975 Contract §1, last Paragraph).

76.  In the underlying action, People ex rel. Madigan v. County of Lake, 06 CH 2569, the Illinois IEPA, through the Illinois Attorney General, seeks injunctive relief and civil penalties to force the final and permanent abatement of the alleged violation of IEPA rules and regulations, relating to the HWG WS (i.e. the replacement of the current non-compliant HWG WS).

77.  In conformance with its obligations under the 1975 Contract with the Village, the County retained design engineers to design a new Code-compliant public WS for installation in the HWG area.   Plans and reviewable design engineering drawings for a new Code-compliant public WS were completed, and the County submitted an Application for Special Use Permit and Variations to the Village on September 20, 2007.  The Village failed or refused to review or to approve that September 20, 2007 County submittal.

78.  Following a third survey of HWG area residents (Survey 3), the County's design engineers revised the plans and design of the new Code-compliant public water system for

the HWG area, and on February 5, 2008 submitted to the Village complete plans and drawings, along with an Application for Permit, to site the new Code-compliant public water system in the Village rights-of-way or public easements, in accordance with the 1975 Contract between the Village and the County.

79. On February 25, 2008 the Village Mayor verbally advised the County's Public Works Director that no Village permit would issue for the HWG WS (on the February 5, 2008 Application), unless the County first signed off on a Village sanitary sewer interceptor IEPA application and withdrew a pending County motion in a Village IEPA proceeding concerning a FPA (Facilities Planning Area) amendment request. Neither the Village sanitary sewer interceptor IEPA permit matter, nor the Village IEPA FPA amendment request, has any relation to the subject HWG WS.

80. On February 29, 2008 the Village engineer advised the County, for the first time, that the 4 inches diameter water distribution mains contained in the submitted February 5, 2008 plans and drawings, did not comply with a Village Fire Ordinance that required 8 inches diameter minimum water mains. The Village engineer advised the County that the County would therefore need to apply for a variance to the Village Board from the Village Fire Ordinance.

81. In the January 2007 HWG WS Technical Advisory Committee (TAC) report, on which Technical Committee both the Village engineer and Village Administrator were members, and in each of the 3 HWG area resident preference surveys conducted in calendar year 2007, the County option, or County-Aqua hybrid option, was always identified as having 4 inches diameter water distribution mains. The Village engineer, and the Village,

13

failed to disclose or concealed the Village Fire Ordinance and its Village rule that water

mains be 8 inches diameter minimum.

82. On April 10, 2008 the County submitted to the Village a variation request,

seeking a waiver of the Village Fire Ordinance 8 inches diameter minimum water main size

requirement.

83. In breach of its obligations under the 1975 Contract to give the County the right

to use Village streets and public easements, the Village has failed or refused to act on either

the County's February 5, 2008 Right-of-Way Application for Permit or the County's April

10, 2008 request for variation from the Village Fire Ordinance rule that water mains be 8

inches diameter minimum.

84. In further breach of the 1975 Contract, the Village Mayor made the performance

of certain acts by the County, on unrelated matters, a precondition to the Village acting on

the above described HWG WS applications by the County. The Village fails and refuses to,

and continues to fail and refuse, to perform its obligations under the 1975 Contract.

85. That the HWG WS plans and engineering drawings, submitted to the Village on

February 5, 2008, have been approved for construction by the IEPA, subject only to there

being a signed agreement with the water supplier (Aqua Illinois).

86. The County is ready, willing, and able, to construct and install the new Code-

compliant HWG WS, with 4 inches diameter water distribution mains, under the terms and

conditions of the 1975 Contract.

87. The County has made applications to the Village in conformance with Village

ordinances, and the County has made reasonable attempts to comply with Village ordinances.

14

88. The Village has failed and refused, and continues to fail and refuse, to act on the County's applications for Village approvals and permits. And, in furtherance of the Village Mayor's refusal to process any County HWG WS permit application unless County action on unrelated matters is first performed, the Village has, and continues to, refuse to approve and permit the HWG WS, as has been approved by the State IEPA.

89. That by reason of the Village failures to act in accordance with the 1975 Contract, the County has no plain and adequate legal remedy to the continued and purposeful Village delays and refusals to permit installation of a Code-compliant public water system in the HWG area.

90. That the Village failure or refusal to act compromises the ability of the County to operate a safe public water supply, in compliance with State regulations, and may subject the County to additional civil penalties solely because of the failure or refusal to act by the Village.

WHEREFORE, Third-Party Plaintiff COUNTY OF LAKE prays that this Court enter a judgment in its favor and against Third-Party Defendant VILLAGE OF HAWTHORN WOODS,

(a) ordering the Village to specifically perform under the 1975 Contract by issuing a permit to the County to install the IEPA-approved HWG WS, with 4 inches diameter water distribution mains, in the Village rights-of-way and public easements; or

(b) If specific performance cannot be granted, that the Court enter an Order determining that the County has made reasonable attempts to comply with Village ordinances, but that the Village has unreasonably failed or refused to issue local approvals, in conformance with the terms of the 1975 Contract between the County and the Village, and

15

that therefore no Village approvals are required to be obtained by the County to construct and

install and make operational the Code-compliant HWG public WS as approved by the

Illinois EPA;

(c) and, for Third-Party Plaintiff's costs of this action; or for such other or different

relief as the Court deems just and equitable under the circumstances.


## COUNT II
### Breach of Contract – Refusal to Issue R-O-W Permit

91-144.  Third-Party Plaintiff County adopts as if fully set forth herein Paragraphs 37-

90 of Count I above as Paragraphs 91 – 144 of this Count II.

145.  That the County has performed all terms and conditions under the 1975

Contract required of the County, to the extent that the County has been permitted to do so by

the Village.

146.  That as a proximate result of the Village failure to perform the 1975 Contract

according to its terms, the County has been damaged, or will be damaged, in the following:

> (a) the costs and expenses of retained engineers and consultants incurred in
> preparation of the HWG WS design plans and drawings for the September
> 20, 2007 submittal to the Village, which costs and expenses are in an
> amount in excess of $50,000;

> (b) the costs and expenses of retained engineers and consultants incurred in
> preparation of the revised HWG WS design plans and drawings for the
> February 5, 2008 Right-of-Way Application for Permit and April 10, 2008
> Variation request to the Village, which costs and expenses are in excess of
> $50,000;

> (c) the Reimbursement Fees imposed by the Village on the County, relating
> to the Village review of the September 20, 2007, February 5, 2008, and April
> 10, 2008 County submittals, which Village fees exceed $8,400.00;

16

(d)  any and all County costs and expenses relating to land acquisition and real estate contract(s) for the September 20, 2007 HWG WS design and plans, which had to be terminated, which costs and expenses were in excess of $10,000,

(e)  any and all costs and expenses relating to upsizing the water distribution mains, if required, from the IEPA-approved 4 inches to the Village ordinance 8 inches;

(f)  the salary costs, and related expenses, of County Public Works Department staff relating to the HWG WS replacement designs, plans, and drawings for the September 20, 2007, February 5, 2008, and April 10, 2008 submittals to the Village, which costs and related expenses exceeds $50,000; and

(g)  any penalties imposed in the underlying State IEPA enforcement action, attributable to the delays in making an HWG WS replacement Code-compliant water system operational, occasioned by the Village acts or omissions under the 1975 Contract.

WHEREFORE, Third-Party Plaintiff COUNTY OF LAKE prays that this Court enter a judgment in its favor and against Third-Party Defendant VILLAGE OF HAWTHORN WOODS, in an amount in excess of $50,000, to be determined by the Court in accordance with the proofs; for Third-Party Plaintiff's costs of this action; and, for such other or different relief as the Court deems just and equitable under the circumstances.

## COUNT III
### Anticipatory Breach of 1975 Contract – Refusal to Fund New HWG WS

147-202.  Third-Party Plaintiff County adopts as if fully set forth herein Paragraphs 91-146 of Count II above as Paragraphs 147 – 202 of this Count III.

203.  That prior to the 1975 Contract, the Village was the municipal governmental entity that issued permits which resulted in the creation of the HWG WS that did not meet public water system standards. The Village operated and owned that HWG WS prior to the inception of the 1975 Contract.

204. As a party to the 1975 Contract, the Village was representing itself, as a municipal entity operating a public water system, as well as the Village residents who were HWG area customers of that HWG WS.

205. The 1975 Contract provides that, if improvement is made to the HWG WS, that revenue bonds issued by the County "shall be retired by revenues derived from the local System." (Exhibit A, §6).

206. Since formation of the HWG area TAC in late 2006 to investigate available options to replace the HWG WS, the County has continuously advised both the Village, and HWG area residents, that a County-owned and operated new HWG WS would be constructed using subordinate revenue bonds, secured by a surcharge on HWG WS user bills. This subordinate revenue bond financing is the one way that the County, as operator and owner of the HWG WS, can retire revenue bonds from funds derived from the local HWG WS, as is contemplated by the 1975 Contract.

207. Other legal mechanisms are available to the Village to retire revenue bonds from funds derived from the local System, which lies entirely within the municipal boundaries of the Village (such as by a Village Special Service Area).

207. That in compliance with the terms of the 1975 Contract, the County has prepared to issue subordinate revenue bonds, secured by a surcharge on HWG WS bills, which would retire the revenue bonds from funds derived from the local System in accordance with the terms of the 1975 Contract.

208. The contractual obligation, under the 1975 Contract, to fund improvements to the HWG WS is a local obligation of the HWG WS users or the Village.

209. That contrary to, and in violation of, the terms of the 1975 Contract, regarding the local HWG WS obligation to fund improvement to the WS, on May 29, 2008 certain HWG area residents filed a lawsuit against the County, which purports to assert a claim that the County should be held responsible for payment of any HWG WS improvements.

210. That the failure or refusal by HWG WS users, or of the Village, to pay for (retire) revenue bonds, issued for construction of a new Code-compliant public WS, from funds derived from the local HWG WS or HWG area, constitutes a breach of contract.

211. That there is a controversy, and a declaration of the rights of the parties under the 1975 Contract is necessary for there to be a complete resolution of the HWG WS issues, including those issues relating to the local system funding of revenue bonds for construction of a new public WS serving the HWG area, and to fix the source of local funding (whether by a County surcharge on HWG WS users' water bills, or some other local system source by the Village) to provide the construction funding for the new HWG WS, which would permanently abate the non-compliance with IEPA public water system standards, which is sought by the State in the underlying lawsuit.

WHEREFORE, Third-Party Plaintiff COUNTY OF LAKE prays that this Honorable Court enter a declaration of the rights and obligations under the 1975 Contract, and find that:

a) the retirement of subordinate revenue bonds, issued by the County to fund construction of the new HWG WS, through a surcharge to HWG WS users' water bills, is lawful and appropriate under the terms of the 1975 Contract; and,

b) declare that in the event the County cannot surcharge HWG WS users' water bills to raise revenues from the HWG area to retire revenue bonds issued to fund construction of a

new public WS in the HWG area, that the Village shall be obligated to provide a revenue
source to retire such revenue bonds; or,

c) that the Court declare that, as a result of the Village's, or HWG WS users', breach
of the 1975 Contract by failing or refusing to fund system improvements from a local system
source, the County has no obligation to perform under the 1975 Contract and/or that the 1975
Contract is void; and,

d) for such other or different relief as the Court deems just and equitable under the
circumstances.

**COUNT IV**
**1975 Contract Termination, Returning the HWG WS to Village**

212-265.  Alternatively, Third-Party Plaintiff County adopts as if fully set forth herein
Paragraphs 37- 90 of Count I above as Paragraphs 212 – 265 of this Count IV.

266.  That the 1975 Contract contains no term, and therefore a reasonable term is
implied by law for the 1975 Contract.

267. That the County has performed its operation and ownership obligations under
the 1975 Contract, to the extent permitted by the Village and HWG area residents, for a
period of time now approaching 33 years.   That time period is a reasonable contract term.

268.  That the Village now has another public water supply system, other than the
HWG WS, operating within Village boundaries, and the County is informed and believes that
the Village now has Village Fire Ordinance requirements that are more stringent than
minimum State public water supply requirements.

269. That by reason of the foregoing, the Village now possesses the ability as well as the authority to operate the HWG WS.

270. That, by reason of the foregoing, and the Village's breach of the 1975 Contract by its failure or refusal to allow the County to construct and install and operate an IEPA-approved public water supply in the HWG area, and, further, the lack of an agreed local revenue source to pay for the construction and installation of a County-owned and operated, IEPA approved, public water supply system in the HWG area, as contemplated in the 1975 Contract, the County has no further obligation to operate or own the HWG WS, and that the HWG WS can and should therefore by returned to the ownership and operation of the Village.

WHEREFORE, alternatively, Third-Party Plaintiff COUNTY OF LAKE respectfully prays that this Court enter an Order declaring, that the 32+ years term of the 1975 Contract between the County and the Village is a reasonable and complete term for that operation and ownership of the HWG WS within the municipal boundaries of the Village; that the 1975 Contract between the County and Village has now terminated; that the Village has another public water supply system operating within Village municipal boundaries, and that the Village has the ability and the authority to operate the HWG WS; and, therefore, that the ownership and operation of the HWG WS can and should henceforth be transferred from the County to the Village; and, for such other or different relief as the Court deems just and equitable under the circumstances.

21

COUNTY OF LAKE, Illinois

MICHAEL J. WALLER,
State's Attorney of Lake County

By: _____
       James C. Bakk
       Special Assistant State's Attorney

By: _____
       Daniel L. Jasica
       Assistant State's Attorney

James C. Bakk (# 3121531)
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL 60085
(847) 249-9900

Daniel L. Jasica
Assistant State's Attorney
18 N. County Street
Waukegan, IL 60085
(847) 377-3101