IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONOVAN et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 08 C 3098 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| COUNTY OF LAKE, | ) | |
| | ) | |
| Defendant. | ) | |

**LAKE COUNTY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS UNDER FRCP 12(b)(1) AND 12(b)(6)**

The County of Lake ("Lake County"), by and through its attorneys, now files this Reply Memorandum in support of its Motion to Dismiss Plaintiffs' Complaint. In support, Lake County states as follows:

**INTRODUCTION**

Plaintiffs complain that Lake County intends to surcharge them for the costs of a new, upgraded, water system that will be constructed to serve their community. This case does not belong in federal court.

Plaintiffs concede that their breach-of-contract claim (Count I) is insufficient to confer jurisdiction and, assuming that jurisdiction exists, this claim is nothing more than a supplemental state-law claim. Jurisdiction, however, is lacking because of ripeness concerns and because the Tax Injunction Act and/or the Johnson Act strip the Court of jurisdiction over the surcharge dispute.

Even if the Court had jurisdiction, Plaintiffs' equal protection claim (Count II) - which, Plaintiffs concede, is subject to rational basis scrutiny - can and should

be dismissed at the 12(b)(6) stage. Plaintiffs suggest that this shaky claim survives Lake County's motion to dismiss because "notice pleading" is sufficient and because Plaintiffs' Complaint includes the magic words "arbitrary" and "irrational." According to Plaintiffs, this automatically defeats any consideration of rational basis at the motion to dismiss stage.

That is an incorrect statement of the law. Where, as here, there are obvious differences between the Plaintiffs and the other Lake County residents who are, vaguely, alleged to have been treated more favorably, and where rational basis can be detected from the Complaint itself, the Court can, and should, grant Lake County's 12(b)(6) motion and terminate the federal claims.

## ARGUMENT

### I. FRCP 12(b)(1) - Ripeness.

As Lake County said in its opening brief, a charge or surcharge related to the expanded or upgraded water system can only be accomplished by a legislative act. *See* 55 ILCS 5/5-15021 ("rates and charges for use and service for all purposes including charges to connect to such [waterworks] properties . . . shall be established, revised, maintained, be due and payable, and be in force as the county board may determine by separate ordinances.").

As part of their Response Brief (Exhibits B and C), Plaintiffs include letters from Peter Kolb, the Director of the Lake County Public Works Department. It is true that Mr. Kolb's letters strongly set forth the Department's position regarding who is expected to pay for the upgrades to the HWG System, but neither Mr. Kolb,

2

nor the Public Works Department, has the authority to make this determination. The imposition of the proposed surcharge requires a legislative act (*i.e.*, a rate ordinance) and no such act has taken place. Further, no surcharge has actually been levied on Plaintiffs – they have not, as yet, been requested or required to pay a dime.

Unless and until Lake County actually passes a "surcharge" ordinance and attempts to collect from Plaintiff, Plaintiffs have suffered no concrete injury and have no standing. As in *Associated General Contractors of America v. City of Columbus*, 172 F.3d 411, 419-20 (6th Cir. 1999), Plaintiffs are seeking to challenge a legislative "act" before the legislature has, in fact, acted. In that case, years of litigation passed before the Sixth Circuit determined that the trial court never has jurisdiction in the first place. It would be a mistake for the Court to accept Plaintiffs' invitation to jump the gun and rule on a proposed surcharge that has yet to be enacted.

## II. FRCP 12(b)(1) - The Tax Injunction Act and/or the Johnson Act.

Even assuming that the surcharge is already in place (which, as discussed above, Lake County disputes), it is either a tax, or a fee associated with access to a municipally-owned utility. Per *Trading Company of North America, Inc. v. Bristol Township Authority*, 47 F.Supp.2d 563, 567-71 (E.D.Pa. 1999), it might be both, but it is certainly one or the other.

As in a game of three-card monte, Plaintiffs rearrange the card to argue that the surcharge is neither a tax nor a fee. That is simply not possible. Even in the

cases like *Hager v. City of West Peoria*, 84 F.3d 856, 870-72 (7th Cir. 1996), where the Seventh Circuit ultimately concluded that the charge was not a "tax," all the parties, and the Court, acknowledged that if it was not a "tax" it was a "fee." There is no place between the two where Plaintiffs can hide.

    1.    **The Tax Injunction Act.**

Lake County stands by the cases it cited in its opening brief regarding characterization of the charge as a "tax." As discussed, numerous courts have found that similar charges for municipal services are properly classified as "taxes" and, per the Tax Injunction Act, cannot be challenged in federal court. For example, *Jefferson Development Group, Inc. v. Georgetown Municipal Water & Sewer Service*, 2008 WL 687193, *3-*5 (E.D.Ky. 2008) collected and analyzed several cases involving access to municipal waters systems and "hook-up" charges, including "special assessments," imposed upon users. In each case discussed, the court found the charge imposed to be a "tax" even when only a limited number of residents were assessed; *McLeod v. Columbia County, Georgia*, 254 F.Supp.2d 1340, 1344-49 (S.D.Ga. 2003) ("storm water service charge" assessed by county utility was a "tax" and the plaintiffs' challenge was barred by the Tax Injunction Act); *Trading Company of North America,* 47 F.Supp.2d at 567-71 (assessment of sewer charges was considered a "tax" for purposes of the Tax Injunction Act).

    2.    **The Johnson Act.**

If the proposed surcharge is not a "tax," then it is a "fee" charged to Plaintiffs in connection with their access to the County-owned water system. As discussed in

Lake County's Opening Brief, the Johnson Act, 28 U.S.C. § 1342, prohibits federal courts from enjoining, suspending, or restraining "the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or ratemaking body of a political subdivision." This includes the charges assessed by a municipality who owns or operates a water or sewer system, whether the charges are considered fees, rates, assessments or surcharges. *See, e.g., Trading Company of North America,* 47 F.Supp.2d at 573-74 (sewer assessment imposed by township was governed by the Johnson Act and the Johnson Act provided alternative reason for dismissal); *Norman Apartment Ass'n v. City of Norman*, 64 Fed.Appx. 166, 2003 WL 2007730 (10th Cir. 2003) ($5.00 surcharge on each water and sewer customer imposed by city utility was an "order affecting rates" and subject to the Johnson Act); *Beechwood Devp., LLC v. Olympus Terrace Sewer Dist.*, 2005 WL 2573331, * 3 (W.D.Wash. 2005) (challenge to sewer connection fee imposed by municipal utility was barred by the Johnson Act).

Plaintiffs makes several specious argument in an attempt to wriggle out from under application of the Johnson Act. First, Plaintiffs' assertion that the Act only applies when there is a controversy between a state agency and a public utility, *see* Pl. Br. at 11-12, is not supported by the language of the Act and not borne out by recent cases (cited above) which apply the Act when citizens challenge the rates or fees set by public utilities. Indeed, *Beechwood Devp., LLC,* discusses and distinguishes the very cases that Plaintiffs rely upon. *Id.*, *3.

5

Second, Plaintiffs argue that the surcharge has not been imposed via an "order." Pl. Br. at 13. In one sense, Lake County agrees: *There is no "order" because the County has not, as yet, passed the legislation necessary to impose the surcharge.* This lack of an "order" goes to Lake County's ripeness concerns, discussed above, and provides a different basis for dismissal.[1]

But if the Court agrees with Plaintiffs and assumes that the surcharge has, in fact, already been implemented, then there *is* an "order" within the meaning of the Act. Under the language of the Act, and the above-cited cases, rates and charges established by municipal utilities and imposed on citizens or homeowners are considered to be imposed by "order." Under this hypothetical, any "order" imposing a surcharge on users of the upgraded HWG System *would* fall within the terms of the Act, which deprives the Court of jurisdiction to entertain an equal protection challenge.

### III. FRCP 12(b)(6) - In the Alternative, Plaintiffs' Equal Protection Claim Should Be Dismissed Because a Rational Basis for Distinct Treatment is Plainly Apparent.

Even if Plaintiffs could overcome jurisdiction hurdles and set forth an independent equal protection claim, Lake County would be entitled to judgment on the merits of that claim. As Plaintiffs are not part of a protected class, their challenge to the presumptive "surcharge" would be entitled to no more than rational basis scrutiny.

---

[1] Plaintiffs call this a "concession" by Lake County regarding the County's Johnson Act argument. *See* Pl. Br. at 13. But if Plaintiffs are willing to acknowledge the lack of an order setting rates, it is they who concede that this case is not ripe.

Plaintiffs concede that rational basis is the appropriate test, but fall back on the concept of "notice pleading." According to Plaintiffs, so long as Lake County has been put on notice that its decision to surcharge is, allegedly, "arbitrary" or "irrational," Plaintiffs' equal protecition claim cannot be dismissed at the motion to dismiss stage. Pl. Br. at 13-14. This analysis is incorrect. Rather, "in order to survive a motion to dismiss for failure to state an equal protection claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classification." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 639 (7th Cir. 2007).

Thus, district courts can apply the rational basis test at the motion to dismiss stage, and do dismiss claims where a rational basis for a distinction can be discerned from the pleadings or by common sense. *Id*. at 639. *See also Hold Fast Tattoo, LLC v. City of North Chicago,* 2008 WL 656077, *3 (N.D. Ill. March 7, 2008) (on motion to dismiss, court found that city's decision to deny zoning to tattoo parlor was rationally related to city's planning goals); *520 S. Michigan Assoc. Ltd. v. Shannon*, 2007 WL 2728757, *9-*10 (N.D. Ill. Sept. 17, 2007) ("Courts in this district have repeatedly granted 12(b)(6) motions to dismiss an equal protection claim when the government action is rationally related to a legitimate objective.").[2]

---

[2] It is true that some cases, *see, e.g.*, *Smith v. City of Chicago*, 457 F.3d 643, 650-55 (7th Cir. 2006), manage to advance past the motion to dismiss stage, but this is not an endorsement of a non-dismissal policy. Indeed a close reading of *Smith* and other Seventh Circuit decisions shows that many equal protection cases advance further than they should. *See, e.g., National Paint & Coatings Assn. v. City of Chicago*, 45 F.3d 1124, 1127-28 (7th Cir. 1995). Indeed, Plaintiffs fail to cite a case where the Seventh Circuit reversed a district court for dismissal of an equal protection claim at the motion to dismiss stage.

7

Lake County has explained that the contract between the County and Hawthorn Woods (attached as Exhibit A to Plaintiffs' Complaint) provides the rational basis for its decision to surcharge Plaintiffs and other users of the to-be-constructed, new, HWG System. *See* Lake County's Opening Brief at 8-9. Significantly, Plaintiffs have failed to allege facts showing that another local water system in Lake County is subject to a similar arrangement or that these "similarly situated" residents have received preferred treatment for an irrational reason.

In fact, the 1975 Contract expressly recognizes that the quarterly rates to be charged to the users of the HWG System "are subject to changes as may be necessary or feasible by rising or lowered cost of operation and construction." 1975 Contract, Section 3. Thus, under the plain terms of the Contract, the costs of construction related to the new and improved HWG System are authorized to be reflected in higher rates (*e.g.*, a rate surcharge). The implementation of this contractual provision is neither shocking nor irrational.

The Peter Kolb letters, which Plaintiffs attached to their memorandum as Exhibits B and C, further explain this decision. As Kolb wrote in his May 12, 2008 letter (Ex. C) "the 1975 contract, by which the County took over the water system from the Village, provided that any upgrades to the system shall be paid from local revenues of the HWG system."[3]

---

[3] In their prematurely filed Motion for Summary Judgment, Plaintiffs attempted to argue that there is a meaningful distinction between, on the one hand "expansion" or "improvement" of the HWG System (the terms used in the Contract) and, on the other hand, "replacement" of the HWG System (Plaintiffs' preferred term). There is no distinction. More importantly, for purpose of equal protection analysis, the County's interpretation of the Contract and its decision to surcharge based upon the Contract need

8

In sum, if the Court finds that there has, in fact, been a decision with respect to the surcharge, the Contract provides a simple, rational, explanation for Lake County's decision and this case should go no further.

## CONCLUSION

For the above reasons, the Court should find that it lacks jurisdiction over this matter and should dismiss the case. In the alternative, if the Court believes it has jurisdiction, it should find that Plaintiffs' equal protection count fails to state a claim and it should dismiss Plaintiffs' supplemental state law breach-of-contract claim pursuant to 28 U.S.C. § 1367.


Dated: September 4, 2008

Respectfully submitted,
COUNTY OF LAKE, ILLINOIS

By:      /s/ Adam M. Kingsley
        One of its attorneys

Michael J. Waller
State's Attorney of Lake County
Daniel L. Jasica
Assistant State's Attorney
18 N. County Street
Waukegan, IL 60085
(847) 377-3101

James C. Bakk
Special Assistant State's Attorney
200 N. M.L. King Ave., Suite 206
Waukegan, IL 60085
(847) 249-9900

Adam M. Kingsley
Holland & Knight LLP
131 S. Dearborn, Suite 3000
Chicago, IL 60603
(312) 928-6027

# 5574578_v1

---

only be rational, which they are. If Plaintiffs wants to parse contract language, they must do so in a state-law declaratory judgment action, not in federal court.