IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DONOVAN, AMANDA DONOVAN, ROBERT COOPER, AND MARY COOPER, individually and on behalf of all persons similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 08-cv-3098 |
| v. | ) ) | Judge Joan H. Lefkow |
| COUNTY OF LAKE, a body politic and corporate of the State of Illinois, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant County of Lake ("Lake County") moves to dismiss the complaint filed by Christopher Donovan, Amanda Donovan, Robert Cooper and Mary Cooper individually, as residents of the Village of Hawthorn Woods ("Hawthorn Woods"), and on behalf of all similarly situated persons (hereinafter "plaintiffs"). In Count I, plaintiffs allege that Lake County has violated the Equal Protection clause of the Fourteenth Amendment by refusing to allocate public funds to replace the water system that serves Hawthorn Woods residents and stating its intention to fund the replacement system by imposing a surchage on the residents' water bills. In Count II, plaintiffs sue as third-party beneficiaries of a contract between Lake County and Hawthorn Woods, alleging that Lake County breached the contract by failing to properly maintain, operate and improve the water system. Lake County contends that the complaint must be dismissed under Federal Rules of Civil Procedure 12(b)(1) because the court lacks subject matter

1

jurisdiction over plaintiffs' equal protection claim[1] and under 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, Lake County's 12(b)(1) motion [#19] will be granted.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "When evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* at 855 (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)) (internal citations omitted). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (internal citations omitted).

## BACKGROUND

This case arises from a dispute over who should bear the cost of replacing the water system which serves the residents of Hawthorn Woods and Glennshire, known as the Hawthorn Woods-Glennshire Water System ("HWG WS"). The HWG WS is owned and operated by Lake County pursuant to a contract with Hawthorn Woods executed in 1975 ("1975 Contract"). Under the 1975 Contract, Lake County is obligated to maintain the HWG WS, make any

---

[1] The parties agree that subject matter jurisdiction in this case is premised on the equal protection claim alleged in Count I. Pls.' Resp. at 6-7.

2

necessary improvements to it and keep it in compliance with state environmental regulations. Plaintiffs allege that state environmental regulations require Lake County to prevent total coliform, which is an indicator of the presence of other potentially harmful pathogens, from developing and to maintain adequate levels of chlorine, which helps to destroy coliform, in the HWG WS. Compl. ¶¶ 13-14, 17-19. Plaintiffs further allege that annual testing revealed the presence of total coliform and that subsequent testing by the Illinois Environmental Protection Agency ("IEPA") revealed the absence of chlorine. *Id*. ¶¶ 16, 18. After receiving these test results, the IEPA advised Lake County that it would need to replace the HWG WS to bring it into compliance with IEPA standards. On November 30, 2006, the Illinois Attorney General filed an enforcement suit against Lake County styled, *People ex rel. Madigan* v. *County of Lake*, 06 CH 2569.[2]

In 2007, Lake County began exploring options for replacing the HWG WS and conducted a series of preference surveys of the residents served by that system to determine which option they preferred. The results of the final survey showed a clear preference for what Lake County termed the County Hybrid Option, a Lake County owned and operated water main with water purchased in bulk from Aqua Illinois, Inc. In a letter dated January 30, 2008, the Lake County Department of Public Works informed the residents that the estimated cost of the County Hybrid option was $4,201,416 or $18,756 per resident payable via a one-time lump sum or over a thirty-year period as a surcharge on the residents' quarterly water bills.[3] *See* Ex. B to Pls.' Resp. Although Lake County agreed to contribute $1 million to the County Hybrid option,

---

[2]Plaintiffs contend, and Lake County does not dispute, that the state court action does not involve the issue of who is required to pay the costs associated with replacing the water system.

[3]This results in an approximate surchage of $156.30 on each quarterly water bill.

it refused the residents' request to use money from its Public Works funds to pay for the balance of the expenses associated with replacing the HWG WS. *See* Letter from Peter E. Kolb, Director, Lake County Department of Public Works, to Chris Donovan, President, Citizens for an Equitable Water Solution (May 12, 2008), attached at Ex. C to Pls.' Resp. Lake County takes the position that the 1975 Contract obligates the users of the HWG WS to pay for the replacement HWG WS. *Id.*; *see also* Def.'s Reply at 8.

Plaintiffs filed this suit on May 29, 2008 contending that Lake County's decision not to use Public Works funds to replace the HWG WS is arbitrary, irrational and unrelated to any legitimate interest such that it violates their right to equal protection because Lake County has used such funds to make capital improvements to infrastructure in other similar situations in the past. *Id.* ¶¶ 27-30. Plaintiffs also argue that Lake County has breached the 1975 Contract with Hawthorn Woods by failing to properly maintain and make improvements to the HWG WS. Plaintiffs' prayer for relief seeks damages, specific performance of the contract and an injunction forbidding Lake County from further discriminating against them. Lake County has since filed a third-party complaint against the Village of Hawthorn Woods in the state court case alleging, *inter alia*, that the Village is in anticipatory breach of the 1975 Contract based on the refusal of the HWG WS users or the Village of Hawthorn Woods to pay the surcharge associated with the new water system. *See* Third-Party Compl. in *People ex rel. Lisa Madigan* v. *County of Lake*, No. 06 CH 25696 ¶¶ 203-211, attached as Ex. D to Pls.' Resp.

## DISCUSSION

Lake County moves to dismiss this case for lack of jurisdiction arguing that plaintiffs' equal protection claim is not yet ripe for judicial review and that plaintiffs lack standing to assert such a claim. "It is well-established that the existence of a case and controversy is a prerequisite

4

for the exercise of federal judicial power under Article III." *Sprint Spectrum L.P.* v. *City of Carmel*, 361 F.3d 998, 1002 (7th Cir. 2004). "A case or controversy requires a claim that is ripe and a plaintiff who has standing." *Ind. Right to Life, Inc.* v. *Shepard*, 507 F.3d 545, 549 (7th Cir. 2007)). The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Sprint Spectrum*, 361 F.3d at 1002 (quoting *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967)). Standing requires a plaintiff to show, *inter alia*, that "it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. . . ." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). In many cases ripeness coincides squarely with the standing doctrine's requirement of an "injury in fact." *Anders.* v. *Fort Wayne Community Schs.*, 124 F. Supp. 2d 618, 630 (N.D. Ind. 2000) (quoting *Thomas* v. *Anchorage Equal Rights Comm'n*, 220 F. 3d 1134, 1138 (9th Cir. 2000)). Although the two concepts are related, they "require distinct inquiries: Whereas ripeness is concerned with *when* an action may be brought, standing focuses on *who* may bring a ripe action." *Shepard*, 507 F.3d at 549 (emphasis in original) (internal quotations omitted).

Lake County contends that plaintiffs' equal protection claim is not ripe because the surcharge of which they complain has yet to be imposed. For the same reason, Lake County argues that plaintiffs' have not suffered an "injury in fact" and therefore lack standing to sue. In response, plaintiffs argue that their claim is ripe because Lake County has already made the decision not to allocate Public Work funds for the construction of the new HWG WS and stated

5

its intention to impose a surcharge on users of the HWG WS.[4] Plaintiffs also argue that they need not show they have suffered an "injury in fact" because they have alleged an equal protection violation.[5] The gist of Lake County's argument is grounded in ripeness concerns, which are dispositive in this case. Accordingly, the court need not consider the parties' positions on standing and turns to the ripeness inquiry.

Ripeness deals "with the time, if any, at which a party may seek pre-enforcement review of a statute or regulation." *Triple G. Landfills* v. *Bd of Comm'rs*, 977 F.2d 287, 288 (7th Cir. 1992). "Customarily, a person can challenge the legality of a statute or regulation only when he or she is prosecuted for violating it." *See* Erwin Chemerinsky, Federal Jurisdiction, §2.4.1 (4th Ed. 2003). Consistent with this custom, federal courts within the Seventh Circuit have ruled that

---

[4]Plaintiffs circumvent the ripeness arguments raised by Lake County by characterizing their injury as Lake County's decision not to allocate Public Work funds, rather than its decision to impose the surcharge. It is clear from the complaint, however, that plaintiffs consider these decisions two-sides of the same coin and that plaintiffs' true complaint is that they will be made to pay for replacing the HWG WS. Furthermore, if plaintiffs challenge Lake County's decision not to use Public Work funds to pay for the HWG WS, rather than its decision to impose a surcharge, then standing concerns are raised because plaintiffs do not allege that Lake County has used Public Works funds to support an unconstitutional program as required to establish municipal taxpayer standing; they have merely alleged that Lake County has chosen not to use Public Works funds to support a lawful program. "A plaintiff's status as a municipal taxpayer is irrelevant for standing if no tax money is spent on the allegedly unconstitutional activity." *Freedom from Religion Found.* v. *Zielke,* 845 F.2d 1463, 1470 (7th Cir. 1988) (plaintiffs lacked standing as municipal taxpayers where they conceded that no money had been spent on the allegedly unconstitutional activity); *see also Gonzales* v. *North Township of Lake County*, 4 F.3d 1412, 1416 (7th Cir. 1993) (same). Thus, it is unclear whether plaintiffs could be said to have suffered a concrete and particularized injury because they have not alleged that the Public Works funds were spent on an unconstitutional activity.

[5]Although plaintiffs make this argument as to standing, it should be noted that equal protection claims must satisfy constitutional ripeness concerns to be justiciable. *See*, *e.g.*, *Patel* v. *City of Chicago*, No. 1 C 1174, 2002 U.S. Dist. LEXIS 5482 (N.D. Ill. March 25, 2002) (Andersen, J.) (equal protection challenge to a city ordinance designating a particular area for redevelopment dismissed as unripe where no eminent domain proceedings had been instituted against the plaintiffs).

cases are unripe when concrete action has yet to be taken against the complaining party. *See*, *e.g.*, *Corey H.* v. *Bd. of Educ. of Chicago*, 534 F.3d 683, 688-89 (7th Cir. 2008) (dismissing appeal for lack of jurisdiction on the basis of ripeness where appellant, the Chicago Board of Education, challenged a 20% enrollment cap on disabled students in any Chicago public school because the schools which the Board asserted could not comply with the cap had not yet applied and been rejected for waivers and no adverse action had been taken against the Board); *Oriental Health Spa* v. *Ft. Wayne,* 864 F.2d 486, 489-90 (7th Cir. 1988) (a due process challenge to an ordinance creating license revocation and suspension procedures applicable to massage parlors was not ripe because plaintiff had not yet been threatened with revocation or suspension); *Thompson* v. *Ret. Plan for Employees of S.C. Johnson & Sons, Inc*., No. 07-1047, 2008 U.S. Dist. LEXIS 96902, at *27-28 (E.D. Wis. Nov. 14, 2008) (dismissing ERISA claim on the basis of ripeness where plaintiffs argued that pension plans in which they participated used an interest credit that exceeded a market rate of return because interest crediting rate was variable and had not yet been calculated). In order to seek preenforcement review of a statute, the party asserting federal jurisdiction must show that (1) the issue is fit for judicial decision and (2) hardship to the parties would result if the court withholds consideration. *Texas* v. *United States*, 523 U.S. 296, 300-01, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998).

  **A. Whether plaintiffs are seeking pre-enforcement review of Lake County's decision to impose the surcharge.**

Lake County contends that plaintiffs' claim is not yet ripe because the surcharge of which plaintiffs complain has yet to be imposed. According to Lake County, the Counties Code, codified at 55 ILCS 5/5-15021, requires that any surcharge associated with water supply in the

7

counties must be accomplished by a legislative act.[6] Thus, Lake County argues that because the Lake County Board has yet to pass an ordinance imposing the surcharge, the plaintiffs' claim is premature. Plaintiffs disagree with Lake County's reading and argue that the statute is not applicable because it does not apply to replacement water systems. Pls.' Resp. at 6.

The court need not decide whether the section of the Counties Code referenced by Lake County applies to the surcharge associated with replacing the HWG WS because even if it does not apply, plaintiffs do not dispute that the surcharge has yet to be imposed. *See* Pls.' Resp. at 5-6. Thus, plaintiffs are seeking pre-enforcement review and must show that they will suffer hardship if consideration is withheld and that their claim is fit for review.

### B. Whether Plaintiffs will Suffer a Hardship if Consideration is Withheld.

Hardship is a prerequisite of preenforcement review. *See Smith* v. *Wisconsin Dep't of Agriculture*, 23 F.3d 1134, 1141 (7th Cir. 1994) (citing Chemerinsky, Federal Jurisdiction §2.4); *Poe* v. *Ullman*, 367 U.S. 497, 503-09, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (affirming motion to dismiss where case was fit for judicial review because it involved a purely legal dispute but where the hardship on the parties was minimal). "The principle at work in the hardship analysis is that a plaintiff should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution." *Smith*,

---

[6]The portion of the statute cited by Lake County is under "Powers and Duties of County Boards" and addresses "Water Supply, Drainage and Flood Control." It reads in relevant part:
> [R]ates and charges for use and service for all purposes, including charges to connect to such properties or facilities, and which may include the imposition of interest and penalties for failure to make payments when due, except for charges or rates established by contract for a wholesale supply of water as herein authorized shall be established, revised, maintained, be due and payable, and be in force as the county board may determine by separate ordinance . . . .

55 ILCS 5/5-15021.

23 F.3d at 1141. In this case, the surcharge has not yet been imposed and Plaintiffs are currently suffering no hardship.[7] Furthermore, Plaintiffs will suffer only minimal hardship if they are forced to wait until the surcharge to have their claim reviewed. Plaintiffs do not allege that they are threatened with having to forego any lawful behavior. If the claim is dismissed as unripe, the only hardship they would suffer is pecuniary, *i.e.*, they will be charged the first installment of the surcharge, approximately $156.30, on their quarterly water bill. Moreover, plaintiffs can refuse to pay the surcharge without risk of serious repercussions, such as criminal prosecution, while reinstituting this suit. As plaintiffs will not suffer hardship if the court withholds consideration of their claim until the surcharge is imposed, their claim must be dismissed.

        **C.**        **Whether Plaintiff's Equal Protection Claim is Fit for Judicial Review.**

Even if plaintiffs were likely to face hardship if the court withheld review, their claim would still have to be dismissed because this case is unfit for judicial review. A case is not fit for judicial review where the factual record is undeveloped. *See Smith,* 23 F.3d at 1141; Chemerinsky, Federal Jurisdiction §2.4.3. "The critical issue concerning fitness for review is whether the claim involves uncertain and contingent events that may occur as anticipated or may not occur at all." *Patel*, 2002 U.S. Dist. LEXIS 5482, at *11. Here, the parties' dispute over whether an ordinance is required to impose the surcharge demonstrates that the plaintiffs' equal protection claim involves uncertain and contingent events because they do not agree on how the surcharge will be imposed. If, as Lake County contends, the Counties Code does apply and the Lake County Board must pass an ordinance in order to impose the surcharge, the absence of that legislation makes this case even less fit for judicial review because that ordinance has not yet

---

[7]As Lake County points out, the letters from Lake County describing the surcharge have no legal effect and are merely strongly-worded opinions. Def.'s Reply at 2-3.

been enacted. *See Assoc. Gen. Contractors of Am.* v. *City of Columbus*, 172 F.3d 411, 419-20 (6th Cir. 1999) (plaintiffs lacked standing to challenge the constitutionality of a new equal business opportunity code because the new code had yet to be enacted and thus plaintiffs had no injury in fact). Furthermore, the court would be unable to give plaintiffs the relief they request, "an order forbidding Lake County from further unlawfully discriminating against the Class," Compl. at 10., because the court cannot enjoin the Lake County Board from passing a surcharge ordinance. "[E]quity cannot interfere with, or in advance restrain, the discretion of a municipal body's exercise of legislative powers." *Vincennes Water Supply Co.* v. *Pub. Serv. Comm'n of Ind.*, 34 F.2d 5, 9 (7th Cir. 1929) (citing *New Orleans Water Works Co.* v. *City of New Orleans*, 164 U.S. 471, 481, 17 S. Ct. 161, 41 L. Ed. 518 (1896)). Because the court may not enjoin Lake County from imposing the surcharge and because it is unclear how, when and whether the surcharge will be imposed, the case is unfit for judicial review and must be dismissed

## CONCLUSION AND ORDER

For the foregoing reasons, the defendant's motion to dismiss [#19] is granted because the court lacks jurisdiction.


February 5, 2009 Enter: *[signature: Joan N. Lefkow]*

JOAN HUMPHREY LEFKOW
United States District Judge